UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BMC SOFTWARE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION H-17-2254 |
| | § | |
| INTERNATIONAL BUSINESS MACHINES | § | |
| CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the Magistrate Judge's Memorandum and Recommendation ("M&R") which recommends that plaintiff BMC Software Inc.'s ("BMC") application for preliminary injunction (Dkts. 37, 38) and motion to admit and objections to certain documents (Dkt. 170) be denied. Dkt. 219. BMC filed legal and factual objections to the M&R. Dkt. 230. Defendant International Business Machines Corporation ("IBM") responded. Dkt. 242. BMC replied. Dkt. 246. After considering the application for preliminary injunction and motion to admit, the M&R, objections, related documents in the record, and applicable law, the court is of the opinion that the M&R should be ADOPTED IN PART and BMC's application for preliminary injunction should be DENIED. BMC's objections to the M&R should be OVERRULED IN PART. Additionally, BMC's motion to admit should be GRANTED and BMC's objections to certain documents should be OVERRULED.

**I. BACKGROUND**

This is a complex breach of contract case. BMC filed suit against IBM on July 21, 2017, alleging breach of contract, misappropriation of trade secrets, and tortious interference. Dkt. 1 at

15–18. BMC and IBM have a complicated business relationship; they are both collaborators and direct competitors as to certain clients. Dkt. 130 at 17. AT&T is one of those clients. *Id.* at 45. AT&T uses BMC software on IBM mainframes even though IBM sells competitive software. *Id.* at 21–22. IBM provides IT support to AT&T on both the IBM mainframes and the BMC software. *Id.* at 24–25. To facilitate IBM's IT support for AT&T, IBM has access to BMC's technical support and to other potentially sensitive software information. *Id.* at 37. IBM and BMC have a series of agreements that govern this aspect of their relationship. *Id.* at 25. However, AT&T has begun to replace its BMC software with IBM software and hired IBM to perform the migration services. Dkts. 127 at 43, 134 at 23. BMC alleges that IBM improperly used its access to BMC information and resources to facilitate this change. Dkt. 230 at 1.

On September 22, 2017, BMC filed the pending application for preliminary injunction. Dkts. 37, 38. A hearing was held before Magistrate Judge Nancy K. Johnson from November 28 to December 1, 2017. Dkts. 120, 125, 129, 135. The court heard in-depth testimony, including expert testimony, over several days. Dkt. 219 at 2, 16–18. BMC subsequently filed a motion to admit exhibits and objections to certain documents. Dkt. 170.

On July 10, 2018, Judge Johnson issued her M&R. Dkt. 219. The M&R contains extensive proposed findings of fact and recommends that BMC's application for preliminary injunction be denied because BMC did not demonstrate irreparable injury. *Id.* at 2–24, 26. The M&R also recommends that BMC's motion to admit be denied, and BMC's objections be overruled, because BMC did not show good cause to reopen the preliminary injunction hearing record. *Id.* at 2.

BMC objects to the M&R on several grounds. Dkt. 230. First, BMC raises seven objections to the M&R's proposed findings of fact. *Id.* at 6–10. Next, BMC objects that it will suffer

irreparable injury and that the Magistrate Judge errs by not considering the remaining three prongs of the preliminary injunction standard. *Id.* at 10–29. Finally, BMC objects that its motion to admit documents was denied in error. *Id.* at 29–30. The court will consider each objection in turn.

## II. LEGAL STANDARDS

### A. Review of a Magistrate Judge's Opinion

For dispositive matters, the court "determine(s) de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), Advisory Comm. Note (1983). For nondispositive matters, the court may set aside the magistrate judge's order only to the extent that it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Here, the court will review all issues to which objections were filed de novo and will consider whether there is any clear error on the face of the record with regard to portions of the M&R to which no party objected.

### B. Application for Preliminary Injunction

A party seeking a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure has the burden to show four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any prejudice the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Bluefield Water Ass'n, Inc. v. City of Starkville*, 577 F.3d 250, 252–53 (5th Cir. 2009); *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285

(5th Cir. 1999). Injunctive relief, particularly at the preliminary stages of litigation, is an extraordinary remedy that requires an unequivocal showing of the need for the relief to issue. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). Thus, injunctive relief should only be granted where the movant has "clearly carried the burden of persuasion." *Bluefield Water*, 577 F.3d at 253.

### III. OBJECTIONS

The court will first consider BMC's factual objections to the M&R. It will then consider BMC's legal objections. Finally, the court will consider BMC's objections to the denial of the motion to admit.

**A.    Factual Objections**

First, BMC makes seven objections to the M&R's findings of fact. Dkt. 230 at 6–10. However, BMC's factual objections do not impact the preliminary injunction determination. Even if the facts were as BMC contends, BMC still did not clearly demonstrate a substantial threat of irreparable injury. *See Bluefield Water Ass'n, Inc.*, 577 F.3d at 253 ("[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements.") (quotations omitted). Further, these findings of fact are not binding at a trial on the merits. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. . . . [F]indings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."). Regardless, the court has reviewed the extensive, four-day-long hearing record and concluded that the M&R's factual findings are accurate. Dkts. 126, 127, 128, 130, 132, 133, 134.

For the purposes of the preliminary injunction proceeding, the M&R's proposed findings of fact are ADOPTED IN FULL and BMC's factual objections are OVERRULED.

**B.      Legal Objections**

Next, BMC makes several objections to the M&R's proposed conclusions of law. Dkt. 230 at 10–29. BMC first contends that the Magistrate Judge errs in concluding that BMC has not demonstrated the irreparable injury required to justify a preliminary injunction. *Id.* at 10–20. BMC further argues that the Magistrate Judge errs by not considering the remaining three requirements for issuance of a preliminary injunction. *Id.* at 20–29. The court disagrees on both counts.

   **1.      Irreparable Injury**

BMC argues that, contrary to the M&R's proposed conclusions of law, it did in fact demonstrate a substantial threat of irreparable injury. *Id.* at 10–20. BMC contends that several of its arguments establish irreparable injury as a matter of law. *Id.* at 11. At the outset, the court agrees with IBM that BMC must demonstrate harm that will occur *before* trial, and that BMC has failed to do so. *Camenisch*, 451 U.S. at 395 ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."); *Bluefield Water Ass'n, Inc.*, 577 F.3d at 253. Nonetheless, the court will address each of BMC's arguments.

BMC first argues that IBM is in breach of Outsourcing Attachment ("OA") § 5.4, which constitutes irreparable injury as a matter of law because the non-displacement agreement in OA § 5.4 is an enforceable covenant not to compete. *Id.* at 11–14. BMC relies exclusively on cases that consider breaches of traditional non-compete provisions. Dkt. 230 at 14–15. However, OA § 5.4 is not a traditional non-compete agreement—BMC and IBM remain direct competitors. Rather, OA § 5.4 is a non-displacement agreement that prohibits IBM from using information gathered while

5

providing IT services to displace BMC products as to a specific list of clients. Dkt. 1 at 8. This distinction matters because one of the central harms from breach of a non-compete provision is the flow of sensitive information to competitors that would not have occurred if the non-compete provision had been honored.[1] *See, e.g.*, *RealPage, Inc. v. Enter. Risk Control, LLC*, No. 4:16-CV-00737, 2017 WL 3313729, at *1 (E.D. Tex. Aug. 3, 2017); *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 569–70 (S.D. Tex. 2014) (Werlein, J.). It is this transfer of information that cannot be undone and therefore cannot be adequately compensated by money damages. *Heidt*, 998 F. Supp. 2d at 569–71.

Here, IBM already had access to BMC's allegedly protected information—the OA was created specifically to protect BMC because IBM would need access to such information to provide IT outsourcing services. Dkt. 130 at 34–35, 95–96. BMC's alleged harm does not flow from the fact that IBM has the information, but rather that IBM used that information in a specific way as to a specific client to displace BMC software. *Id.* at 58, 97. This harm, unlike the breach of a traditional non-compete clause, may be adequately compensated with money damages because BMC's ultimate harm is the loss of revenue from the allegedly displaced software, whether from AT&T or other customers. *See, e.g.*, Dkt. 132 at 139–40. BMC has calculated such damages in the past for use in negotiations with IBM and cannot credibly argue that such a calculation is now impossible. *See, e.g.*, Dkt. 130 at 63–72, 77.

---

[1] The other commonly recognized form of harm from breach of a non-compete is the loss of customers. *Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 777 F. Supp. 1349, 1351–52 (N.D. Tex. 1991). However, in cases where the court granted a preliminary injunction, the aggrieved party could demonstrate that the offending party had actively taken steps to poach multiple customers from the aggrieved party. *See, e.g.*, *id.*; *Baker Petrolite Corp. v. Spicer*, No. 06-1749, 2006 WL 1751786, at *4 (S.D. Tex. June 20, 2006) (Miller, J.). As discussed below, BMC's arguments on this point are purely speculative at this time.

Second, BMC argues that a preliminary injunction is necessary to prevent ongoing harm prior to trial that might not be compensated at trial because of the Master License Agreement's ("MLA") damages limitation provision. Dkt. 230 at 15. However, this limitation "results from the express terms" of a contract BMC negotiated and is therefore "self-inflicted harm" that does not constitute irreparable injury. *Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003); *see also Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) (holding that harm resulting from the terms of a contract is self-inflicted harm and does not constitute irreparable injury). BMC knew the risks it was taking when it agreed to the MLA's terms, including the potential for less-than-full recovery in the event of a legal dispute.

Third, BMC argues that it will suffer irreparable injury if IBM engages in other behavior that requires BMC to add more claims or file more lawsuits. Dkt. 230 at 15–16. This argument fails for two reasons. First, it is highly speculative and does not establish the "presently existing actual threat" required for issuance of a preliminary injunction. *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001) (quotations omitted). BMC's allegations have no factual basis that can be found in the record. Second, IBM has represented to the court that it is not engaged in any such behavior, and IBM will presumably continue to abide by that commitment. Dkt. 242 at 15. The merely speculative threat of further alleged wrongdoing by IBM does not constitute a substantial threat of irreparable injury at this time.

Fourth, BMC argues that it will suffer irreparable injury by losing AT&T as a customer and suffering damage to its business reputation and goodwill. Dkt. 230 at 16–18. BMC argues that the loss of AT&T will result in a parade of misfortunes, such as losing other large customers and having to lay off employees. Dkts. 132 at 42–44, 110; Dkt. 230 at 16–18. However, this argument is also

too speculative to support a preliminary injunction. BMC has not yet lost any large customers as a result of the loss of AT&T, nor has BMC demonstrated that any such loss is likely to occur. *See, e.g.*, Dkt. 132 at 117. BMC's only evidence to support this disaster scenario is the speculative testimony of one witness, which is based on that witness's conversations with unidentified "nervous customers." Dkt. 132 at 43–46. Even if BMC did lose customers other than AT&T, such losses have already been calculated by BMC. Dkt. 132 at 29–31. BMC further argues that customers could expand their contracts with BMC with each renewal and that future lost revenue is difficult to calculate because of that possibility. *Id.* at 40–41. Again, however, such expansion is highly speculative. *See id.* Moreover, BMC was never guaranteed that AT&T would renew this particular contract with BMC when the contract expired in 2019. Dkt. 127 at 10. AT&T reportedly had reservations about renewing the BMC contract before it made the decision to use IBM software. Dkt. 126 at 107–11. Again, mere speculation or possibility is not a sufficient basis on which to issue extraordinary relief. *Emerson*, 270 F.3d at 262.

Finally, BMC contends that IBM is misusing BMC's trade secrets and that such misuse constitutes irreparable injury as a matter of law. Dkt. 230 at 18–20. To determine whether a trade secret exists, Texas law provides a six-factor test:

> (1) the extent to which the information is known outside of [the holder's] business; (2) the extent to which it is known by employees and others involved in [the holder's] business; (3) the extent of the measures taken by [the holder] to guard the secrecy of the information; (4) the value of the information to [the holder] and to [the holder's] competitors; (5) the amount of effort or money expended by [the holder] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003). To issue an injunction, the court does not need to determine whether the information to be protected is actually a trade secret. *Mabrey v. SandStream,*

*Inc.*, 124 S.W.3d 302, 311 (Tex. App.—Fort Worth 2003, no pet.). Rather, "the trial court determines only whether the applicant has established that the information is entitled to trade secret protection until the trial on the merits." *Id.*

Ultimately, this issue turns on a credibility determination between dueling witnesses as to whether IBM has any of BMC's trade secrets. *See, e.g.*, Dkts. 127 at 46–77 (direct examination of Jeffrey Decker), 133 at 4–49 (direct examination of Bruce Hartley). This court is not required to conduct a de novo hearing of the witnesses, but the court must review the hearing record to make a de novo credibility determination. *Calderon v. Waco Lighthouse for the Blind*, 630 F.2d 352, 355–56 (5th Cir. 1980). The court has reviewed the extensive hearing record and agrees with the Magistrate Judge that IBM's witness testimony is more credible. Dkt. 219 at 28–30. IBM's expert, Dr. Bruce Hartley, testified that BMC only provided IBM with patches of executable code—rather than highly confidential source code—and that such patches did not contain any code that would typically constitute a trade secret. Dkt. 133 at 12–24; *see also* Dkt. 126 at 45–47; *cf.* Dkt. 127 at 97–98. Hartley testified that he had reviewed the transactions between IBM and BMC did not identify any trade secret information. Dkt. 133 at 12. Hartley noted that protected trade secrets, such as source code, would not be provided to low-level help desk personnel and would not be freely given to IBM employees calling the BMC help desk for IT support. *Id.* at 17–18. Moreover, BMC's own intellectual property filings with the SEC indicate that BMC only viewed source code, not executable code, as requiring protection. *Id.* at 20–21.

In contrast, BMC's key witness, Jeffrey Decker, mainly alleged that IBM improperly used information obtained from BMC IT support. Dkt. 127 at 46–77. Although Decker argued that BMC did provide trade secret source code to IBM in one instance, Decker later acknowledged that BMC

9

did not provide source code to its customers for its products. Dkt. 127 at 97–99. Even if IBM did use information from BMC improperly, testimony from BMC witnesses at the injunction hearing failed to demonstrate that such information should be entitled to trade secret protection pending trial. *See* Dkt.127 at 74–75. Thus, for the purposes of this preliminary injunction proceeding, the court finds that IBM did not receive any trade secrets. However, as previously discussed, these determinations are not binding at trial on the merits and are open for reconsideration at a later date. *See supra* pp. 4–5.

In sum, although BMC has shown a conceptually possible threat of irreparable injury, BMC has not clearly shown a substantial threat of such injury before trial. *Cf. Bluefield Water*, 577 F.3d at 252–53. The court makes no determination as to whether BMC has actually been injured. However, to the extent BMC may be injured, BMC's injuries can be compensated by money damages or other relief at trial and do not merit the extraordinary measure of granting preliminary equitable relief.

### 2. Additional Injunction Requirements

BMC further contends that the Magistrate Judge errs in failing to consider the remaining three requirements of a preliminary injunction. Dkt. 230 at 20–21. BMC argues that these requirements should be considered on a "sliding scale" and that the four requirements together weigh in favor of granting relief. *Id.* However, this argument ignores the clear rule that a party seeking a preliminary injunction must "clearly carr[y] the burden of persuasion on *all four* requirements." *Bluefield Water Ass'n, Inc.*, 577 F.3d at 253 (quotations omitted) (emphasis added). Because BMC cannot carry its burden of showing a substantial threat of irreparable injury, the court need not address whether BMC can meet the remaining requirements.

### C. Motion to Admit and Objections

Last, BMC objects that the Magistrate Judge denied its motion to admit documents in error. Dkt. 230 at 29–30. The Magistrate Judge denied BMC's motion to admit with the understanding that BMC was attempting to admit additional evidence to the preliminary injunction hearing record. Dkt. 219 at 2. However, the court acknowledges that BMC was simply attempting to admit joint exhibits as agreed at the preliminary injunction hearing. Dkts. 130 at 4–5, 230 at 29–30. IBM is unopposed to the admission. Dkt. 242 at 35. The Magistrate Judge's denial of BMC's motion to admit was therefore "clearly erroneous" and BMC's motion should be GRANTED. Fed. R. Civ. P. 72(a).

Finally, BMC did not object to the portion of the M&R that overruled objections in BMC's motion to admit. *See* Dkts. 219 at 2 (M&R); Dkt. 230 at 29–30 (motion to admit and objections). The court sees no "clear error on the face of the record" with regard to the M&R's ruling on these objections. Fed. R. Civ. P. 72(b), Advisory Comm. Note (1983). BMC's objections are therefore OVERRULED.

### IV. CONCLUSION

BMC's objections to the M&R (Dkt. 230) are OVERRULED IN PART. The M&R (Dkt. 219) is ADOPTED IN PART. BMC's application for preliminary injunction (Dkts. 37, 38) is DENIED. BMC's motion to admit (Dkt. 170) is GRANTED and its objections on this point are SUSTAINED. BMC's objections to certain documents (Dkt. 170) are OVERRULED.

Signed at Houston, Texas on September 21, 2018.

_____
Gray H. Miller
United States District Judge