# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| BMC SOFTWARE, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION H-17-2254 |
| | § | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | § | |
| | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is the Magistrate Judge's Order (Dkt. 256) granting defendant International Business Machines Corporation's ("IBM") motion to strike plaintiff BMC Software, Inc.'s ("BMC") jury demand. Dkts. 211 (jury demand), 213 (motion to strike). BMC filed objections to the Order. Dkt. 269. IBM responded (Dkt. 271) and BMC replied (Dkt. 274). After considering the Order, objections, responses, evidence, and applicable law, the court is of the opinion that BMC's objections to the Order (Dkt. 269) should be OVERRULED. IBM's motion to strike (Dkt. 213) should be GRANTED and the Order (Dkt. 256) should be ADOPTED IN FULL.

## I. BACKGROUND

### A. Relationship Between the Parties

This is a breach of contract case. BMC and IBM have a complicated business relationship; they are both collaborators and direct competitors as to certain clients. Dkt. 130 at 17. AT&T is one of those clients. *Id.* at 45. AT&T uses BMC software on IBM mainframes even though IBM sells competitive software. *Id.* at 21–22. IBM provides IT support to AT&T on both the IBM mainframes and the BMC software. *Id.* at 24–25. To facilitate IBM's IT support for AT&T, IBM has access to

BMC's technical support and to other potentially sensitive software information. *Id.* at 37. However, AT&T has begun to replace its BMC software with IBM software and hired IBM to perform the migration services. Dkts. 127 at 43, 134 at 23. BMC alleges that IBM improperly used its access to BMC information and resources to facilitate this change. Dkt. 230 at 1.

BMC subsequently filed suit against IBM, alleging breach of contract, misappropriation of trade secrets, and tortious interference. Dkt. 1 at 15–18. IBM filed the pending motion to strike BMC's jury demand on the ground that BMC contractually waived its right to a jury trial. Dkt. 213. United States Magistrate Judge Nancy K. Johnson granted the motion, concluding that the claims at issue were governed by a contractual jury trial waiver and that the waiver was enforceable. Dkt. 256.

**B.    The Parties' Agreements**

On March 31, 2008, the parties executed both a Master License Agreement ("MLA") and an "Outsourcing Attachment to the Master License Agreement" ("2008 OA"). Dkts. 211-1 (MLA), 211-3 (2008 OA). The 2008 OA expired by its own terms on March 30, 2013, and the parties executed another Outsourcing Attachment effective March 31, 2013 ("2013 OA"). Dkts. 211-3 at 2, 211-4 at 2. Subsequently, the parties negotiated and executed the 2015 Outsourcing Attachment ("2015 OA"), which is the only operative outsourcing attachment and the basis for several of BMC's claims in the current action. Dkt. 211-2; Dkt. 269 at 8.

The central issue before the court is whether a jury trial waiver in the MLA governs claims brought under the 2015 OA. In a paragraph titled "Miscellaneous Terms", the MLA states that "[t]he parties expressly waive any right to a jury trial regarding disputes *related to [the MLA]*." Dkt. 211-1 at 5 (emphasis added). IBM argued that this waiver applies not only to claims brought under the

MLA, but also to all claims under the 2015 OA. Dkt. 271. The Magistrate Judge agreed with IBM, concluding that: (1) the jury trial waiver in the MLA was enforceable; (2) the MLA and the 2015 OA constituted one fully integrated agreement, subjecting the 2015 OA to the MLA's waiver; and (3) all of BMC's claims were "related to" the MLA under the language of the waiver. Dkt. 256.

## II. STANDARD OF REVIEW

A party may file objections to a Magistrate Judge's ruling within fourteen days of being served with a copy of a written order. Fed. R. Civ. P. 72; *see also* 28 U.S.C. § 636(b)(1)(c). The standard of review used by the district court depends on whether the Magistrate Judge ruled on a dispositive or non-dispositive motion. *See* Fed. R. Civ. P. 72; *see also* 28 U.S.C. § 636(b)(1)(c). District courts must "modify or set aside any part of [an order on a nondispositive motion] that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

## III. OBJECTIONS

Most of the substantive arguments in BMC's objections were considered, and correctly rejected, by the Magistrate Judge. BMC argues that: (1) the scope of the Order is unnecessarily broad and decides issues that have not been properly briefed; (2) the Magistrate Judge incorrectly concluded that the MLA and the 2015 OA constitute one integrated agreement; (3) the Magistrate Judge relied on a mistake of fact in concluding that the jury waiver provision was enforceable; and (4) the Magistrate Judge should have applied New York law, not federal law, in determining whether BMC preserved its jury trial rights on its fraudulent-inducement claim. Dkt. 269. However, with one narrow exception, the court finds no clear error in the Order and adopts the Order's analysis in full.

### A. Scope of the Order

First, BMC brings two objections to the scope of the Order. BMC first objects that the Order unnecessarily addresses the full extent of the relationship between the MLA and the 2015 OA by concluding that the two documents are one integrated agreement. Dkt. 269 at 10–11. BMC argues that the Order should have confined its analysis to whether BMC's claims were "related to" the MLA under the language of the jury waiver. *Id.* However, the crux of BMC's argument to the Magistrate Judge was that the MLA and the 2015 OA were separate agreements, and that therefore claims arising out of the 2015 OA were not "related to" the MLA. Dkt. 225 at 7–8. This argument all but required the Magistrate Judge to address the integration question in full, and BMC had ample opportunity to brief the issue. The court finds no clear error on this point.

BMC also objects that the Magistrate Judge "reflexively" applied New York law to the question of "whether the contracts were fully integrated without first conducting a choice-of-law analysis."[1] Dkt. 274 at 5. BMC's concern is rooted in the Order's general assertion that "*[p]ursuant to section 16 of the MLA*, [both the MLA and the 2015 OA] are governed by New York law." Dkt. 256 at 6 (emphasis added). The Order proceeded to rely on New York authority in determining whether the MLA and the 2015 OA were integrated. *Id.* BMC argues that: (1) the Order should not have applied New York law to the integration issue prior to deciding that the MLA and the 2015 OA were fully integrated; and (2) the Order should have conducted a choice-of-law analysis to determine which law applied. Dkt. 269 at 10–11.

---

[1] This argument directly conflicts with BMC's later argument that New York law should apply to preserve its fraudulent-inducement claim. Dkt. 274 at 5–7; *cf.* Dkt. 269 at 21–23.

However, BMC's own briefing also eschews a choice-of-law analysis, noting that "New York and Texas authorities are materially similar on general contract-interpretation principles" and citing to both authorities "interchangeably." Dkt. 225 at 11 n.2. Further, "[i]f the laws of the states do not conflict, then no choice-of-law analysis is necessary." *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) (quoting *W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990)). BMC's objections, consistent with its previous briefing, do not specify how Texas contract law principles would have altered the Magistrate Judge's analysis on the integration issue. Dkt. 274 at 5–7. The Magistrate Judge therefore did not err by not conducting a choice-of-law analysis.

However, the court agrees that the Order should not have applied the MLA's choice-of-law provision to the integration issue before deciding that the 2015 OA was integrated with, and therefore governed, by the MLA. *See* Dkt. 256 at 6. Thus, to the extent the Order concludes that the agreements are governed by New York law for all purposes, the court does not adopt this reasoning and the parties may address this issue at a later date.[2] However, the Order's analysis is otherwise correct on this issue. Under both New York and Texas contract law, as discussed below, the MLA and the 2015 OA are one integrated agreement. Again, with one narrow exception, the court finds no clear error.

---

[2] It appears that BMC's real concern is not with the integration issue, but with attorney's fees. According to BMC, Texas law generally allows for recovery of attorney's fees in breach-of-contract cases, while New York law is much more restrictive. Dkt. 274 at 7 n.2. The parties are free to brief the issue of whether New York or Texas law applies to attorney's fees and other issues in the future, but must do so in light of this court's and the Magistrate Judge's conclusion that the MLA and the 2015 OA are one integrated agreement.

**B.     Integration of the MLA and the 2015 OA**

Second, BMC argues that the Magistrate Judge's central conclusion about the relationship between the MLA and the 2015 OA is incorrect. According to BMC, the Order "analyzed the [] MLA and the 2015 OA at a very high level, and failed to engage the specific contractual language showing the precise and limited ways that the parties intended these agreements to work together." Dkt. 269 at 12. BMC contends that the 2015 OA and the MLA cannot be one fully integrated agreement because the 2015 OA "does not incorporate the MLA or its jury-waiver provision for the purposes of IT Services engagements." Dkt. 225 at 16; *see also* Dkt. 269 at 12. BMC also argues that other elements of the text and history of the two agreements make clear that the agreements are separate contracts. Dkt. 269 at 14.

However, straightforward language in the 2015 OA indicates the parties' clear intention for the 2015 OA and the MLA to form one integrated contract. *See Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210, 1213 (N.Y. 2007) ("[T]he intention of the parties [to the contract] may be gathered from the four corners of the instrument and should be enforced according to its terms."); *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005) ("In construing a contract, we must ascertain and give effect to the parties' intentions as expressed in the document."). Despite BMC's contention to the contrary, the Order closely examined the text of the 2015 OA. Dkt. 256 at 14–21. Based on this careful examination, the Order correctly concluded that the parties intended for the 2015 OA and the MLA to be read as one. *Id.* As the Order notes, "the 2015 OA's title literally reads 'Amended and Restated Outsourcing *Attachment to the [MLA]* between [BMC] and [IBM].'" Dkt. 256 at 16 (emphasis added). The first sentence of the 2015 OA also provides that the "Attachment . . . is made to that certain Master License Agreement dated March 31, 2008."

6

Dkt. 211-2 at 2 (citations omitted). These provisions, and others discussed in the Order, provide ample evidence for the Order's conclusion that the parties intended for the MLA and the 2015 OA to constitute one integrated agreement.

Some language in the 2015 OA could, if considered in a vacuum, indicate an intention for the 2015 OA and the MLA to be read as separate contracts. *See* Dkt. 269 at 12–13. For example, BMC points to language in the 2015 OA that "this OA will govern all IT Services engagements by [IBM] and [] all prior Orders, Access and Use Agreements, MO's, License Suspension Agreements and Participation Agreements entered into under the Prior Agreements will now be governed by this OA and the [MLA]." Dkt. 211-2 at 11. BMC also contends that "Products" and "Orders" are singled out as being governed by the MLA. Dkt. 269 at 12–13. BMC contends that therefore the 2015 OA is an independent contract on the subject of IT services and is not fully integrated with the MLA in regard to BMC's claims regarding those services. *Id.*

However, BMC's argument fails in part because "IT Services" is not a hermetically sealed category. Instead, by the terms of the 2015 OA, IBM must elect certain options pertaining to IT services. Dkt. 211-2 at 2. These options include "Access and Use" and "License Suspension"—both topics expressly governed by the MLA. Dkt. 211-2 at 2; *id.* at 3 (governing "access and use for IT services"); *see also id.* at 11. BMC's argument relating to "Products" and "Orders" suffers from the same deficiency. IBM's IT services are provided on products, which themselves are provided through orders, thus subjecting IT services to the MLA under the 2015 OA's own terms. *See* Dkt. 211-2 at 2 (discussing "options regarding [IBM's] use of the Products" and certain "Orders" in regard to its "provision of IT Services"). Thus, BMC's distinction between IT services and other topics governed by the MLA is artificial.

More generally, BMC's textual arguments rely on implication, in the face of major provisions that plainly and directly contradict BMC's arguments. Dkt. 269. The court cannot conclude, based on implication, that the Order was clearly erroneous in relying on straightforward language in the 2015 OA that requires integration. The Order's analysis is sound, and the court adopts it in full.

C.  **Enforceability of the Jury Trial Waiver**

Third, BMC challenges the Magistrate Judge's determination that the jury waiver is enforceable. BMC asserts that the Order mistakenly concludes that BMC drafted the jury waiver. Dkt. 269 at 19–21. Because the Order references this conclusion throughout the analysis of whether the waiver is enforceable, BMC argues that the analysis is flawed. Dkt. 269 at 19–21. However, this argument fails for two reasons.

Most significantly, although the Order references BMC's status as drafter of the MLA, the Order's enforceability analysis does not turn on that conclusion. Before the Magistrate Judge, BMC primarily argued that the waiver was unenforceable because it was impermissibly inconspicuous. Dkt. 225 at 21. The Magistrate Judge disagreed, noting that the waiver was in plain language, written in an identical font size as the rest of the MLA, and was in a short document between two sophisticated parties. Dkt. 256 at 10–13. Having reviewed the parties' briefing, the court concludes that the Magistrate Judge's analysis on this issue is correct.

Additionally, according to BMC, the Order concludes that BMC specifically drafted the language of the jury waiver provision itself. Dkt. 269 at 19. However, though the Order does imply that BMC drafted the waiver provision, the Order's analysis emphasizes only that BMC initially drafted the *MLA*. Dkt. 256 at 8. As drafter of the MLA, "BMC would have had the opportunity to negotiate, review and revise the terms of its own agreement that was presented to IBM for IBM to

8

negotiate, review and revise." *Id.* This is true whether or not BMC specifically drafted the jury waiver provision.[3]

Finally, no matter which party initially drafted the MLA, BMC was a sophisticated party to a complex business transaction in which neither side had a significant bargaining power advantage over the other. Dkt. 256 at 9–10. The jury waiver is in plain language, in regular-sized font, in a short, five-page contract. Dkt. 211-1 at 5. The court finds no clear error in the Order's conclusion that the jury waiver is enforceable and adopts the Order's reasoning in full.

### D. Application of New York Law to BMC's Fraudulent-Inducement Claim

Finally, BMC objects to the Magistrate Judge's application of federal law in determining that BMC's fraudulent-inducement claim is also governed by the jury waiver. Under federal law, a fraudulent-inducement claim must specifically challenge the jury-waiver clause in order to avoid being governed by the clause. *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007); Dkt. 256 at 22–23. However, under New York law, a fraudulent-inducement claim is not governed by the challenged contract's jury-waiver provision as long as the fraud claim "challenges the validity of the underlying agreement." *J.P. Morgan Sec. Inc. v. Ader*, 9 N.Y.S.3d 181, at *2 (N.Y. App. Div. 2015); *see also* Dkt. 225 at 23–24 (collecting cases). Because BMC's fraudulent-inducement claim challenges the 2015 OA as a whole, and not the jury-waiver provision specifically, the Order applied federal law and concluded that the fraudulent-inducement clause was governed by the jury-waiver provision. Dkt. 256 at 22–23.

---

[3]To the extent BMC objects to the Order's finding that BMC drafted the MLA as a whole, that objection is also overruled. Given the fact that the MLA was a license from BMC to IBM, and the absence of evidence to the contrary despite the extensive discovery already available to the parties on this issue, the Magistrate Judge's conclusion that BMC originally drafted the MLA is not clearly erroneous. *See* Dkt. 256 at 8.

9

BMC does not challenge the Order's conclusion that federal law applies to this issue. Dkt. 269 at 22; *see also Simler v. Conner*, 372 U.S. 221, 222 (1963) ("[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law . . . Only through [doing so] can the uniformity in its exercise which is demanded by the Seventh Amendment be achieved."). However, BMC notes that some federal courts have applied state law in place of federal law "where, as here, state law is more protective than federal law of the jury trial right." Dkt. 269 at 22 (quoting *In re Cty. of Orange*, 784 F.3d 520, 529–32 (9th Cir. 2015)). Because New York law preserves BMC's jury right as to the fraudulent-inducement claim, BMC contends that this court should apply New York law instead of federal law. *Id.* BMC argues that this result is particularly appropriate because "the parties have agreed by contract" that New York law should apply. *Id.*

However, the Second Circuit has squarely rejected this argument. *Merrill Lynch*, 500 F.3d at 188. In *Merrill Lynch*, the court held that fraudulent-inducement claims in federal court are subject to a contractual jury-trial waiver unless the plaintiff claims that the waiver "was itself induced by fraud." *Id.* The court recognized analogous Supreme Court precedent which provides that an arbitration clause is effective as to a fraudulent-inducement claim unless the claim specifically challenges the arbitration clause. *Id.* (citing *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837–38 (10th Cir. 1988)). Moreover, the *Merrill Lynch* court reasoned that adopting the New York rule would "make[] it too easy for a litigant to avoid its contractual promise to submit a case to a judge by alleging fraud." *Id.* Given this precedent, along with the Supreme Court's mandate that "the right to a jury trial in the federal courts is to be determined as a matter of federal law," this court declines to apply state law as BMC urges. *Simler*, 372 U.S. at 222.

## IV. Conclusion

BMC's objections (Dkt. 269) are OVERRULED. The Order (Dkt. 256) is ADOPTED IN FULL. IBM's motion to strike BMC's jury demand (Dkts. 213) is GRANTED.

Signed at Houston, Texas on January 25, 2019.

_____
Gray H. Miller
Senior United States District Judge