UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BMC SOFTWARE, INC., § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> INTERNATIONAL BUSINESS MACHINES § <br> CORPORATION, § <br> § <br> *Defendant*. § | CIVIL ACTION NO. 4:17-CV-2254 |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are seven motions to exclude experts, five of which were filed by plaintiff BMC Software, Inc. ("BMC") and two of which were filed by defendant International Business Machines Corporation ("IBM"). Dkts. 476, 478, 481, 482, 484, 488, 487. After considering the motions, related filings, and applicable law, the court has determined that it should deny the motions to exclude without prejudice to the parties' right to make objections to specific expert opinions offered at the bench trial in this matter.

**I. BACKGROUND AND SUMMARIES OF MOTIONS**

This is a long-running business dispute in which the parties allege breaches of contract and other wrongful conduct related to the parties' Master Licensing Agreement (MLA) and related Outsourcing Attachments (OA) and their respective services provided to non-party AT&T. The facts have been set forth extensively in prior orders of the court. *See, e.g.*, Dkts. 219, 561. The court will now briefly discuss the content of each motion to exclude.

BMC moves to exclude the testimony of IBM's trade secrets expert, Bruce V. Hartley. Dkt. 476. BMC argues that Hartley's opinions should be excluded because they (1) are based on a misunderstanding of the Texas Uniform Trade Secret Act; (2) unreliable because he did not

analyze the issue of "misappropriation"; and (3) constitute inadmissible legal opinions. *Id.* Additionally, BMC contends that some of Harley's opinions are both irrelevant and lack factual support. *Id.*

IBM moves to exclude the testimony of BMC's trade secrets expert, Kendyl Román. Dkt. 488. IBM argues that Román's opinions should be excluded because they (1) are legal conclusions; (2) are not based on a reliable methodology; (3) are based on inadequate investigation of whether the information at issue is publicly available; and (4) are not supported by the factual record. *Id.*

BMC moves to exclude IBM's expert on software antitrust issues, Richard J. Gilbert. Dkt. 487. BMC argues that Gilbert is unqualified to give opinions in the area of a complex computing environment. *Id.* BMC also argues that Gilbert's opinions are unreliable because (1) he did not do a step-by-step analysis; and (2) the analysis he did do is "riddled with flaws and inconsistencies" and is based on an inaccurate version of the factual record. *Id.* BMC also argues IBM disclosed Gilbert too late because certain of his opinions relate to IBM's counterclaim and are not rebuttal opinions. *Id.* at 29.

BMC moves to exclude IBM's software contract expert, Barry Graham. Dkt. 478. BMC challenges Graham's qualifications to give opinions on outsourcing services or proprietary information and argues that his opinions (1) are not based on reliable methodology; (2) are inadmissible opinions on contract interpretation; and (3) are legal opinions. *Id.* As with Gilbert, BMC also argues that Graham's opinions are based on an inaccurate version of the factual record and that some of Graham's opinions were untimely because they are not true rebuttal opinions.

BMC moves to exclude IBM's expert Paul C. Pinto whose testimony is relevant to IBM's counterclaim for breach of the Most-Favored Customer Provision. Dkt. 481. BMC argues that

2

Pinto's opinions ignore the plain language of the 2015 OA and are unreliable because Pinto did not employ the proper analysis for (1) identifying outsources are covered by the provision; (2) analyzing which rights/terms in the 2015 OA are comparable to the rights/terms in the contracts of other customers; or (3) analyzing the pricing of those rights/terms. *Id.* Again, BMC argues that some of Pinto's opinions are affirmative opinions, not rebuttal opinions, and therefore were not timely disclosed.

BMC moves to exclude IBM's damages expert Christopher Gerardi. Dkt. 484. BMC argues that Gerardi is unqualified to opine on the value of the rights at issue in the 2015 OA. *Id.* BMC argues that Gerardi's opinions are unreliable because he relies on and incorporates the unreliable opinions of Pinto, and his own damages calculation methodology is flawed. *Id.*

IBM moves to exclude BMC's damages expert Alan Ratliff. Dkt. 482. IBM argues that Ratliff's opinions on lost profits, rescission, and disgorgement damages are unreliable and inconsistent with the facts of the case. *Id.* IBM also argues that Ratliff admits some of his opinions are wrong because they are based on improper methodology. *Id.*

## II. LEGAL STANDARD

Courts determine the admissibility of expert opinions under the framework set out in *Daubert v. Merrell Dow Pharmaceuticals Inc.,* 509 U.S. 579, 113 S. Ct. 2786 (1993). Under the *Daubert* framework, trial courts act as "gate-keepers" to ensure that only testimony that is both relevant and reliable is admitted into evidence. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002); *Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 807 (5th Cir. 2018). The gate-keeping safeguards provided by *Daubert* are less essential in a bench trial. *Atl. Specialty Ins. Co. v. Porter, Inc.*, 742 F. App'x 850, 852 n.4 (5th Cir. 2018); *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, No. 6:12-CV-42, 2014 WL 12596557, at *2 (S.D. Tex. Mar. 7, 2014) ("Because there is no

'gatekeeper' issue under *Daubert* in the absence of a jury trial, the Court will reserve ruling on the reliability of the parties' expert witnesses until hearing their testimony during the bench trial."); *see also Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No. CV H-16-280, 2017 WL 4270722, at *4 (S.D. Tex. Sept. 26, 2017) (noting that cross-examination and rebuttal evidence are acceptable methods of challenging "shaky" expert testimony, "particularly when, as here, the testimony is on a question for the judge, not a jury."). In addition, the court should not make credibility decisions in the context of a *Daubert* motion. *Bailon v. Landstar Ranger, Inc.*, No. 3:16-CV-1022-L, 2019 WL 4741795, at *3 (N.D. Tex. Sept. 27, 2019) ("[I]n reviewing a *Daubert* challenge, the court makes no credibility determinations; it only decides whether the threshold reliability standards have been satisfied."). A court determination of the admissibility of expert evidence pursuant to *Daubert* is a matter of discretion. *Burelson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 583 (5th Cir. 2004).

### III. ANALYSIS AND CONCLUSION

The court concludes that the interests of justice and judicial economy weigh in favor of addressing the expert evidence during the bench trial and once it is clear exactly which expert opinions the parties intend to introduce at trial and for what purpose. For example, some of the expert opinions which are the subject of the current motions to exclude may be rendered moot by the court's rulings on summary judgment motions. In addition, some, if not many, of the parties' arguments go to the credibility of the witness, which is a matter better suited for determination by the trial judge as fact-finder after hearing testimony.

It is therefore ORDERED that the parties' motions to exclude expert testimony (Dkts. 476, 478, 481, 482, 484, 487, 488) are DENIED. It is further ORDERED that fourteen days in advance of the pre-trial conference, the parties must submit to the court each specific expert opinion they

intend to offer at trial along with the specific finding of fact or conclusion of law each expert's opinion is offered to support or reject. The opposing side will have seven days to make a specific objection to each specific opinion to be offered at trial. The court will consider the objections and responses at the pretrial conference and, in its discretion, may make a ruling at that time or at the time the opinion testimony is offered.

Signed at Houston, Texas on July  7 , 2021.

_____
Gray H. Miller
Senior United States District Judge