United States District Court
Southern District of Texas

**ENTERED**

September 09, 2021

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| BMC SOFTWARE, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-2254 |
| | § | |
| INTERNATIONAL BUSINESS MACHINES | § | |
| CORPORATION, | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM OPINION AND ORDER

On June 7, 2021, United States Magistrate Judge Christina A. Bryan issued a Memorandum and Recommendation ("M&R") on multiple motions for summary judgments. Dkt. 561. The parties filed objections and responses to objections. Dkts. 567, 569, 577, 580. After considering the M&R, objections, responses, related documents in the record, and applicable law, the court finds that the parties' objections should be overruled in part and sustained in part and the M&R should be ADOPTED IN PART.[1]

### I.   LEGAL STANDARD

The court conducts a de novo review of those conclusions of a magistrate judge to which a party has specifically objected. *See* 28 USC § 636(b)(1)(C); *United States v. Wilson*, 864 F. 2d 1219, 1221 (5th Cir. 1989). To accept any other portions to which there is no objection, the court need only satisfy itself that no clear error appears on the face of the record. *See Guillory v. PPG Indus. Inc.*, 434 F. 3d 303, 308 (5th Cir. 2005), *citing Douglass v. United Servs. Auto. Ass'n*, 79 F.

---

[1]   The facts of this case have been set forth in detail in prior rulings of the court. The facts recited in the M&R (Dkt. 561 at 1–3) are fully adopted and incorporated herein.

3d 1415, 1420 (5th Cir. 1996); *see also* Fed. R. Civ. P. 72(b) Advisory Comm. Note (1983).  After conducting this de novo review, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3).

## II. DISCUSSION

The court rejects the Magistrate Judge's recommendations regarding certain breach of contract issues related to the 2015 Outsourcing Attachment ("2015 OA").  The court denies IBM's motion for summary judgment on BMC's claim for breach of § 5.4 of the 2015 OA and grants BMC's motion for summary judgment on its claim for breach of § 5.4 of the 2015 OA.  It relatedly denies IBM's motion for summary judgment on BMC's claim for breach of § 5.1 of the 2015 OA.  Because the court grants BMC's motion for summary judgment on its claim of breach of § 5.4 of the 2015 OA and denies IBM's motion on BMC's claim for breach of § 5.1, it rules on the competing motions for summary judgment on BMC's claim for breach of § 1.1.  To that end, the court grants IBM's motion and denies BMC's.  Next, though the court adopts the M&R's recommendations regarding the parties' 2008 Master Licensing Agreement, it clarifies its reasoning.  Finally, the court rejects the M&R's recommendation that IBM's motion for summary judgment as to its counterclaim for breach of the most favored customer provision in § 18 of the 2015 OA be denied and that BMC's motion for summary judgment as to IBM's counterclaim be granted only as to the remedy of reformation.  Instead, the court grants BMC's motion in full.

## A.    BMC's Claims for Breach of the 2015 OA

BMC sued IBM for breach of sections 1.1, 5.1 and 5.4 of the 2015 OA, a contract governed under New York law.  Both parties moved for summary judgment on BMC's claims for breach of sections 1.1 and 5.4.  *See* Dkts. 381, 396.  IBM also moved for summary judgment on BMC's

claim for breach of section 5.1.  The relevant provisions are as follows:

**Section 1.1: IT Services Options.**
Customer must elect one of the following five options regarding its use of the Products in relation to its provision of IT Services: *(a) Access and Use– (Sections 5.1, 5.2, 5.3 and 5.4)*, (b) License Suspension – (Section 5.5), (c) Customer owned Products – (Sections 6, 7 and 8), (d) Mirror Order –(Section 11 ), or (e) Shared Hosting – (Section 12).

**Section 5.1: Access and Use.**
BMC will allow Customer to *use, access, install and have operational responsibility* of the BMC Customer Licenses (together, "**Access and Use**") under the terms of the BMC Customer's license agreement with BMC for no fee, including on Computers owned or leased by BMC Customer and at BMC Customer's facility, *provided that the BMC Customer Licenses are used solely for the purposes of supporting the BMC Customer who owns such licenses*.… Except as set forth herein, the BMC Customer Licenses will continue to be governed by the terms, conditions and discounts of the BMC license agreement between BMC and the BMC Customer; notwithstanding the terms of the Agreement and the OA, Customer shall be bound by such terms of such license agreement.…

**Section 5.4: Non-Displacement.**
This Non-Displacement provision *applies only to Customer's Access and Use of BMC Customer Licenses by Customer's strategic outsourcing division (or its successor) for the BMC Customers listed on Exhibit K* (the "**Exhibit K Customers**"). Subject to the foregoing, *Customer agrees that, while Customer cannot displace any BMC Customer Licenses with Customer products, Customer may discontinue use of BMC Customer Licenses for other valid business reasons.* All terms of Sections 5.1, 5.2 and 5.3 apply to Customer's use of BMC Customer licenses belonging to any Exhibit K Customers. BMC and Customer agree to update the Information contained on Exhibit K as part of the reporting requirements in Section 5.3.

Dkt. 382, Ex. 2 at 1–3 (emphasis in bold and italics added).

Having reviewed the parties' objections to the M&R, the court agrees with BMC that, as a matter of law, the above provisions of the 2015 OA are unambiguous.  *See Sarinsky's Garage Inc. v. Erie Ins. Co.*, 691 F. Supp. 2d 483, 486 (S.D.N.Y. 2010) (providing that, under New York law, the question of whether contract language is ambiguous is a question of law to be decided by the court).  Therefore, the court will not look to extraneous evidence to determine the intentions of the parties or the meaning of the contract.  *See Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d, 562, 569,

750 N.Y.S.2d 565, 780 N.E.2d 166, 170 (2002) (providing that extrinsic evidence may be considered to interpret a contract only if the agreement is ambiguous).

The court's conclusion rests upon foundational tenets of contract interpretation.  First, a contract should be interpreted in accordance with the plain meaning of its terms.  *Id.*  Contract language is ambiguous if it is susceptible to more than one reasonable interpretation.  *Id.*; *see also Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244, 997 N.Y.S.2d 339, 21 N.E.3d 1000 (2014) (stating that ambiguity arises when "specific language is susceptible of two reasonable interpretations.").  Moreover, in interpreting contracts, "a court must strive to 'give meaning to every sentence, clause, and word.'"  *Zurich Am. Ins. Co. v. ABM Indus., Inc.*, 397 F.3d 158, 165 (2d Cir. 2005) (quoting *Travelers Cas. & Sur. Co. v. Certain Underwriters at Lloyd's of London*, 96 N.Y.2d 583, 594, 734 N.Y.S.2d 531, 760 N.E.2d 319 (2001)).  That is, "surplusage is a result to be avoided."  *In re Viking Pump, Inc.*, 27 N.Y.3d 244, 261, 33 N.Y.S.3d 118, 52 N.E.3d 1144 (2016).

1.      **Section 5.4 of the 2015 OA**

Read against these principles, § 5.4 of the 2015 OA is unambiguous.  Pursuant to § 5.4, IBM could not "displace any BMC Customer [AT&T] Licenses with Customer [IBM] products." The phrase "displace any BMC Customer Licenses with Customer product" is not susceptible to more than one reasonable interpretation.  As BMC points out in its objections, "displace means [t]o move, shift, or force from the usual place or position, and [t]o take the place of; supplant;" while "discontinue means [t]o stop doing or providing (something); end or abandon."  Dkt. 567 at 36 (citations omitted, changes in original).  IBM's argument requires the court to construe "displace" and "discontinue" as synonymous, which they are not, and to ignore the words that follow "displace" in § 5.4 — "any BMC Customer Licenses *with Customer products*."  (emphasis

added).  In effect, IBM's reading creates the very surplusage that "cannot be countenanced under New York principles of contract interpretation."  *See Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 143 (2d Cir. 2017).

The summary judgment record establishes that IBM displaced BMC Customer Licenses with IBM products when it implemented Project Swallowtail at AT&T.  *See* Dkt. 381 at 30–31 (evidence cited); Dkt. 382, Exs. 99, 102.  Therefore, IBM breached § 5.4 of the 2015 OA.  Accordingly, IBM's motion for summary judgment on BMC's claims (Dkt. 396) is DENIED as to the issue of breach of § 5.4 of the 2015 OA, and BMC's motion for summary judgment on BMC's claim for breach of § 5.4 of the 2015 OA (Dkt. 381) is GRANTED.

### 2.    Section 5.1 of the 2015 OA

The court similarly concludes that § 5.1 of the 2015 OA is unambiguous.  Section 5.1 allows IBM to have access, use, and operational responsibility for BMC Customer Licenses, including the AT&T license, "provided that the BMC Customer Licenses are used solely for the purposes of supporting the BMC Customer who owns such licenses."  Section 5.1 governs IBM's "access," "use," and "operational responsibility" for BMC Customer Licenses, while § 5.4 governs IBM's "displacing" and "discontinuing" BMC Customer Licenses.

The court agrees with BMC's objections to the M&R.  IBM's interpretation of the phrase "operational responsibility" would allow it "to take all actions that the customers themselves could take under their licenses," including displacing BMC product with its own.  This is not a viable interpretation of the contract and cannot render the language of § 5.1 ambiguous.  *See* Dkt. 561 at 10 (citing common definitions of "operational responsibility").  Reading the contract as a whole, "operational responsibility" cannot be interpreted so broadly that it renders the entire purpose of Exhibit K and the non-displacement provision meaningless.  *See In re Viking Pump, Inc.*, 33

N.Y.S.3d at 257; *FCI Grp., Inc. v. City of New York*, 54 A.D.3d 171, 176, 862 N.Y.S.2d 352, 356 (N.Y. App. Div. 2008) (noting that "a contract is to be construed so as to give effect to each and every part"). Therefore, the court concludes that § 5.1 is unambiguous and must be interpreted to preclude access and use of Customer licenses to displace BMC products. Thus, IBM's motion for summary judgment on BMC's claims (Dkt. 396) is DENIED as to the breach of § 5.1 of the 2015 OA.[2]

### 3. Section 1.1 of the 2015 OA

The M&R recommends denial of both IBM's and BMC's motions for summary judgment on BMC's claim for breach of § 1.1 because § 1.1 is "specifically linked to §§ 5.1 and 5.4." Dkt. 561. Having concluded that §§ 5.1 and 5.4 are ***not*** ambiguous, the court need not defer ruling on the claim for breach of § 1.1.

The court agrees with IBM that § 1.1 merely puts IBM to an election regarding how it would use BMC products in relation to its provision of IT Services at AT&T. IBM elected to proceed pursuant to § 1.1(a): "Access and Use– (Sections 5.1, 5.2, 5.3 and 5.4)." The fact that IBM then breached § 5.4, and possibly § 5.1, does not demonstrate that IBM breached § 1.1 by electing "Access and Use." However, the fact that BMC cannot proceed on an independent claim for breach of § 1.1 does not preclude BMC from arguing that § 1.1 provides the framework for benefit-of-the-bargain damages for IBM's breach of § 5.4.

Therefore, IBM's motion for summary judgment on BMC's claims (Dkt. 396) is GRANTED as to the issue of breach of § 1.1, and BMC's motion for partial summary judgment on breach of the outsourcing attachment §§ 1.1 and 5.4 (Dkt. 381) is DENIED as to the issue of

---

[2]    BMC did not move for summary judgment on its claim for breach of § 5.1 of the 2015 OA. *See* Dkt. 381.

breach of § 1.1.

**B.      Damages Limitations**

The Parties' 2008 Master Licensing Agreement ("MLA") contains the following

provisions:

> 9.      **DISCLAIMER OF DAMAGES.**  EXCEPT FOR VIOLATION OF
> PROPRIETARY RIGHTS AND CONFIDENTIALITY (SECTION 8) AND
> INFRINGMENT   CLAIMS   (SECTION   12),   NEITHER   PARTY,   ITS
> AFFILIATES OR BMC'S LICENSORS ARE LIABLE FOR ANY SPECIAL,
> INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES
> RELATING TO OR ARISING OUT OF THIS AGREEMENT, SUPPORT, THE
> PRODUCT OR ANY THIRD PARTY CODE OR SOFTWARE PROVIDED
> WITH  THE  PRODUCT  (INCLUDING,  WITHOUT  LIMITATION,  LOST
> PROFITS, LOST COMPUTER USAGE TIME, AND DAMAGE TO OR LOSS
> OF USE OF DATA), EVEN IF ADVISED OF THE POSSIBILITY OF SUCH
> DAMAGES,  AND  IRRESPECTIVE  OF  NEGLIGENCE  OF  A  PARTY  OR
> WHETHER SUCH DAMAGES RESULT FROM A CLAIM ARISING UNDER
> TORT   OR   CONTRACT   LAW.   THE   FOREGOING   LIMITATION   OF
> LIABILITY  WILL  APPLY  UNLESS  OTHERWISE  REQUIRED  BY  THE
> LOCAL  LAW  OF  THE  COUNTRY  WHERE  THE  PRODUCTS  ARE
> ORDERED.

Dkt. 396-2 at 12 (MLA § 9).

> 10.      **LIMITS ON LIABILITY.**  EXCEPT IN THE CASE OF BMC'S
> OBLIGATIONS WITH RESPECT TO INFRINGEMENT CLAIMS (SECTION
> 12),  OR  EITHER  PARTY'S  BREACH  OF  PROPRIETARY  RIGHTS  AND
> CONFIDENTIALITY (SECTION 8), EACH PARTY'S LIABILITY ARISING
> OUT OF OR RELATED TO THIS AGREEMENT, THE PRODUCT, OR THE
> USE OF THE PRODUCT SHALL BE LIMITED TO THE GREATER OF
> $5,000,000 OR THE AMOUNT PAID OR PAYABLE BY THE CUSTOMER
> FOR THE LICENSE TO THE APPLICABLE PRODUCT GIVING RISE TO THE
> CLAIM.   THE  FOREGOING  LIMITATION  OF  LIABILITY  WILL  APPLY
> UNLESS  OTHERWISE  REQUIRED  BY  THE  LOCAL  LAW  OF  THE
> COUNTRY WHERE THE PRODUCTS ARE ORDERED.

*Id.* (MLA § 10).  The court adopts the M&R's recommendations regarding §§ 9 and 10 and clarifies

its rulings.

### 1. Section 9 of the MLA

The court ADOPTS the M&R's recommendation that BMC's lost profits from AT&T are consequential damages barred by MLA § 9.   Therefore IBM's motion for summary judgment on BMC's claims (Dkt. 396) is GRANTED as to this issue.   BMC's motion for partial summary judgment on the construction of the damages limitations provision (Dkt. 385) is DENIED. However, the summary judgment ruling that § 9 bars BMC's lost profit measure of damages will not preclude BMC from arguing the damage limitation provisions are unenforceable if it succeeds on its claim for fraudulent inducement of the 2015 OA.[3]

The court ADOPTS the M&R's recommendation that that BMC's proposed damages models for $717,000,000, or alternatively for $791,000,000, are direct damages not barred by the limitation on consequential damages contained in MLA § 9.   Therefore, IBM's Motion for Summary Judgment on this issue is DENIED and BMC's Motion for Summary Judgment on this issue is GRANTED.   However, by adopting the M&R the court is not ruling on the amount of damages BMC is entitled to recover as direct, benefit-of-the-bargain damages.   The proper measure and amount of BMC's direct damages remains an issue for trial.

### 2. Section 10 of the MLA

Further, the court ADOPTS the M&R's recommendation that § 10 does not impose an aggregate limit of $5,000,000 on BMC's damages regardless of the number of BMC products displaced by IBM as part of Project Swallowtail.   However, this ruling does not entitle BMC to recover an amount over $5,000,000 per displaced product because whether there is some other amount "PAID OR PAYABLE BY THE CUSTOMER FOR THE LICENSE TO THE

---

[3]      As detailed in the M&R, BMC presented strong and clear evidence in support of its claim for fraudulent inducement of the 2015 OA.  Dkt. 561 at 21–26.

APPLICABLE PRODUCT GIVING RISE TO THE CLAIM" remains to be determined.  If at trial BMC fails to persuade the court as fact-finder that some other amount is "paid or payable" as described in MLA § 10, BMC's contract damages would be limited to $5,000,000 per displaced product.  Assuming the evidence supports displacement of 14 products, and in the absence of some other amount "paid or payable," BMC's damages would be limited to $70,000,000.

## C.    IBM's Counterclaim for Breach of the Most Favored Customer Provision

With respect to IBM's counterclaim that BMC breached the Most Favored Customer Provision found in § 18 of the 2015 OA, the court concludes that IBM has failed to raise a genuine issue of material fact as to the existence of a comparable competitor or its damages.

Section 18 of the 2015 OA provides as follows:

> **MOST FAVORED CUSTOMER**.  BMC represents that the pricing and terms granted to [IBM] pursuant to this Order are comparable to or better than the equivalent pricing and terms currently being offered by BMC to any entity competing with IBM *in the provision of IT Outsourcing Services of BMC for like transactions and volumes*.

Dkt. 381, Ex. 2 at 10 (emphasis in italics added).

To create a fact issue as to BMC's breach of the MFC, IBM must identify an IBM competitor that (1) provides *IT outsourcing services*; (2) *of BMC*; (3) *for like transactions and volumes*. *Id.* (emphasis added).  Rules of contract construction require the court to give effect to all of the words in this provision—not just the words "any entity competing with IBM." *See In re Lehman Bros. Holdings Inc.*, 530 B.R. 601, 608 (Bankr. S.D.N.Y. 2015) ("Courts should, where possible, interpret a contract in a way that does not place undue emphasis upon particular words or phrases and gives effect to all words chosen by the parties.").  IBM's summary judgment evidence identifies multiple entities that compete with IBM in the IT sector but fails to identify competitors providing IT outsourcing services of BMC for like transactions and volumes.

IBM's expert, Paul Pinto, opined that 24 customers "can reasonably be compared to IBM, given their (1) Ability to directly compete with IBM; (2) Capabilities to provide IT outsourcing services to clients; and their (3) Contractual agreements with BMC, that were in effect after March 31, 2013." Dkt. 391, Ex. 30 at 26. But Pinto did not determine whether the 24 entities compete with IBM *in the provision of IT outsourcing services of BMC for like transactions and volumes*. Pinto's opinion is based on assumptions about how large IT companies operate in general. IBM bears the burden to prove that BMC gave better pricing and terms not just to *any* IBM competitor, but to a competitor who competes with IBM in the provision of IT outsourcing services of BMC *for like transactions and volumes*. Even combined with the statements from BMC witnesses noted in the M&R, Pinto's opinion fails to raise a fact issue as to the existence of such a competitor.

In addition, IBM's damages expert, Christopher Gerardi, failed to present evidence of the difference between the value of the pricing and terms of the 2015 OA and the pricing and terms contained in BMC's contract with a competitor. *See Studiengesellschaft Kohle mbh v. Novamont Corp.*, 548 F. Supp. 234, 235 (S.D.N.Y. 1981) (stating proper measure of damages for breach of a most favored customer provision). Gerardi looked at four of the IBM competitors identified by Pinto as having "better" contract terms and attempted to compare the price IBM paid for those contract terms under the 2015 OA with what the competitors paid. However, Girardi's methodology rests only on what IBM paid to BMC for certain provisions and fails to compare the contract terms as a whole.

Gerardi limited his damages calculation to a valuation of one-to-many rights, remote access rights, and shared hosting and service-provider-to-service-provider rights. Dkt. 391, Ex. 31 at 14.[4] As for one-to-many and remote access rights, Gerardi opines that BMC granted similar but less

---

[4]     Gerardi's analysis did not include non-displacement rights. Dkt. 391, Ex. 31 at 14 n.34.

restrictive rights to HP, Wipro, HCL, and Dell without charging them any fees while IBM made an initial payment and a fee for a five-year extension of those rights.  Dkt. 39, Ex. 31 at 15, 18–19.

As to shared hosting and service-provider-to-service-provider rights, Gerardi opined that some of IBM's IT outsourcing competitors received better terms than IBM and IBM suffered actual damages for Shared Hosting and SP-to-SP provisions of greater than $12.466 million, in just the initial term.  *Id.* at 21.  Gerardi's report demonstrates that he looked only at what IBM paid for specific rights and assumed, without a reasonable basis, that other competitors paid nothing for similar rights.  Because the terms are compared in isolation without comparing the contracts as a whole, Gerardi's opinion does not provide evidence of the difference between the pricing and terms BMC offered to IBM under 2015 OA and the pricing and terms BMC offered to IBM's competitors.

To succeed on its counterclaim for breach of the MFC provision, IBM must show damages caused by BMC's alleged breach.  *See Wilder v. World of Boxing LLC*, 310 F. Supp. 3d 426, 445–46 (S.D.N.Y. 2018).  IBM has not met its burden to present a reliable measure of actual damages.

For these reasons, IBM's motion for summary judgment on its counterclaim for breach of § 18 of the 2015 OA (Dkt. 394) is DENIED, and BMC's motion for summary judgment on IBM's counterclaim for breach of § 18 of the 2015 OA (Dkt. 391) is GRANTED.

### III. CONCLUSION

With exception to the rejections and clarifications outlined above, the court accepts Judge Bryan's memorandum and recommendation dated June 7, 2021, and ADOPTS it as the opinion of the court.  It is therefore ordered that:

(1) Judge Bryan's memorandum and recommendation (Dkt. 561) is ADOPTED as the

holding of the court, except as noted;

(2) IBM's motion for summary judgment on BMC's claims (Dkt. 396) IS DENIED as to the issue of breach of § 5.4 of the 2015 OA;

(3) BMC's motion for partial summary judgment on breach of the outsourcing attachment §§ 1.1 and 5.4 (Dkt. 381) is GRANTED as to the issue of breach of § 5.4;

(4) IBM's motion for summary judgment on BMC's claims (Dkt. 396) IS DENIED as to the breach of § 5.1 of the 2015 OA;

(5) IBM's motion for summary judgment on BMC's claims (Dkt. 396) is GRANTED as to the issue of breach of § 1.1;

(6) BMC's motion for partial summary judgment on breach of the outsourcing attachment §§ 1.1 and 5.4 (Dkt. 381) is DENIED as to the issue of breach of § 1.1;

(7) IBM's motion for summary judgment on its counterclaim for breach of § 18 of the 2015 OA (Dkt. 394) is DENIED;

(8) BMC's motion for summary judgment on IBM's counterclaim for breach of § 18 of the 2015 OA (Dkt. 391) is GRANTED in full;

(9) IBM's objections are SUSTAINED IN PART and OVERRULED IN PART; and

(10) BMC's objections are SUSTAINED IN PART and OVERRULED IN PART


Signed at Houston, Texas on September 9, 2021.

Gray H. Miller
Senior United States District Judge