UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BMC SOFTWARE, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No.  4:17-cv-2254 |
| v. | § | |
| | § | |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT INTERNATIONAL BUSINESS MACHINE CORP.'S
APPLICATION FOR RECOVERY OF ITS ATTORNEYS' FEES AND COSTS**

## <u>TABLE OF CONTENTS</u>

Introduction ........................................................................................................................ 1

Background of the Case and Stage of the Proceedings ..................................................... 2

Issue to be Decided ........................................................................................................... 5

Arguments and Authorities ............................................................................................... 5

I.      The MLA entitles the prevailing party to attorneys' fees and costs. .................................. 5

II.     IBM is the prevailing party. ................................................................................................ 6

III.    IBM's requested attorneys' fees and costs are reasonable and customary. ....................... 7
        A.     IBM's attorneys charged reasonable and customary hourly rates. .......................... 9
        B.     IBM's attorneys billed a reasonable and customary number of hours ................. 13
        C.     IBM can receive attorneys' fees incurred in preparing this fee application. ........ 17
        D.     No segregation is warranted .................................................................................. 18
        E.     IBM can receive conditional appellate attorneys' fees in connection with potential appellate challenges. ............................................................................... 19

IV.    IBM is entitled to recover its litigation costs. .................................................................. 19
        A.     IBM is entitled to recover its taxable and other costs. .......................................... 20
        B.     IBM is entitled to recover its expert fees. ............................................................. 21

V.      Summary of IBM's Application ......................................................................................... 23

Conclusion ....................................................................................................................... 23

## TABLE OF AUTHORITIES

Cases                                                                                        Page(s)

*25 E. 83 Corp. v. 83rd St. Associates*,
   624 N.Y.S.2d 125 (N.Y. App. Div. 1995) ...................................................................... 7

*Adhikari v. Dauod & Partners*,
   2017 WL 5904782 (S.D. Tex. 2017) ....................................................................... 11

*Aperia Sols., Inc. v. Evance, Inc.*,
   2021 WL 3710563 (N.D. Tex. 2021) ....................................................................... 12

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
   522 F.3d 182 (2d Cir. 2008) ................................................................................... 9

*Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp.*,
   2008 WL 4833025 (S.D.N.Y. 2008) ............................................................ 8, 19, 22

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
   537 F.3d 132 (2d Cir. 2008) ................................................................................. 14

*Bd. of Mgrs. v. Walker St., LLC*,
   774 N.Y.S.2d 701 (N.Y. App. Div. 2004) ........................................................... 6, 7

*Bergerson v. N.Y. State Off. of Mental Health*,
   652 F.3d 277 (2d Cir. 2011) ................................................................................... 9

*Blanchard v. Bergeron*,
   489 U.S. 87 (1989) ................................................................................................. 8

*Blinds to Go (U.S.), Inc. v. Times Plaza Dev., L.P.*,
   143 N.Y.S.3d 91 (N.Y. App. Div. 2021) ............................................................... 6

*BMC Software, Inc. v. Int'l Bus. Machs. Corp.*,
   100 F.4th 573 (5th Cir. 2024) ............................................................................... 4

*Calsep A/S v. Intel. Petrol. Software Sols., LLC*,
   2022 WL 508334 (S.D. Tex. 2022) ..................................................................... 11

*Chambless v. Masters, Mates & Pilots Pension Plan*,
   885 F.2d 1053 (2d Cir. 1989) ............................................................................... 17

*Chaparro v. John Varvatos Enters., Inc.*,
   2021 WL 5121140 (2d Cir. 2021) ................................................................. 8, 9, 13

*Cho v. Koam Med. Servs. P.C.*,
   524 F.Supp.2d 202 (E.D.N.Y. 2007) ................................................................... 20

*City of San Antonio, Texas v. Hotels.com, L.P.*,
   593 U. S. 330 (2021) ........................................................................................21

*CORE Grp. Mktg. LLC v. MIP One Wall St. Acquisition LLC*,
   184 N.Y.S.3d 13 (N.Y. App. Div. 2023) ...............................................................6

*Crawford Fitting Co v. J.T. Gibbons, Inc.*,
   482 U.S. 437 (1987) .........................................................................................21

*DiBella v. Hopkins*,
   407 F.Supp.2d 537 (S.D.N.Y. 2005) ................................................................21

*DKR Mortg. Asset Tr. 1 v. Rivera*,
   14 N.Y.S.3d 414 (N.Y. App. Div. 2015) ...............................................................6

*Douyon v. NY Med. Health Care, P.C.*,
   49 F. Supp. 3d 328 (E.D.N.Y. 2014) ................................................................19

*Duane Reade v. 405 Lexington, L.L.C.*,
   798 N.Y.S.2d 393 (N.Y. App. Div. 2005) .............................................................7

*E. Ramapo Cent. Sch. Dist. v. New York Sch. Ins. Reciprocal*,
   158 N.Y.S.3d 173 (N.Y. App. Div. 2021) ........................................................9, 12

*Echevarria v. Insight Med., P.C.*,
   102 F. Supp. 3d 511 (S.D.N.Y. 2015) ...............................................................13

*Eni US Operating Co Inc. v. Transocean Offshore Deepwater Drilling Inc.*,
   2018 WL 2271162 (S.D. Tex. 2018) ..................................................................11

*Ernie Otto Corp. v. Inland Se. Thompson Monticello, LLC*,
   936 N.Y.S.2d 756 (N.Y. App. Div. 2012) .............................................................6

*F.H. Krear & Co. v. Nineteen Named Trustees*,
   810 F.2d 1250 (2d Cir. 1987) .............................................................................5

*Farrar v. Hobby*,
   506 U.S. 103 (1992) .........................................................................................14

*Finkel v. Omega Commc'n Servs., Inc.*,
   543 F. Supp. 2d 156 (E.D.N.Y. 2008) .................................................................7

*Flores v. J&B Club House Tavern, Inc.*,
   2012 WL 4891888 (S.D.N.Y. 2012) ...................................................................13

*Fox Indus., Inc. v. Gurovich*,
   2005 WL 2305002 (E.D.N.Y. Sept. 21, 2005) ...................................................14

*Ganci v. U.S. Limousine Serv. Ltd.*,
    2015 WL 1529772 (E.D.N.Y. 2015) ...........................................................20

*Gateway Bank, F.S.B. v. Ideal Mortg. Bankers, Ltd.*,
    2010 WL 3199746 (E.D.N.Y. 2010) ...........................................................20

*Graham Ct. Owner's Corp. v. Taylor*,
    24 N.Y.3d 742 ( N.Y. App. Div. 2015) .......................................................7

*Grand v. Schwarz*,
    2019 WL 624603 (S.D.N.Y. 2019).........................................................6, 20

*Grant v. Martinez*,
    973 F.2d 96 (2d Cir. 1992) .............................................................................8

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).......................................................................................18

*Hill v. Schilling*,
    2022 WL 1321548 (N.D. Tex 2022)...........................................................11

*Imperium v. Samsung*,
    2018 WL 1602460 (E.D. Tex. 2018) ...........................................................11

*In re Nat'l Lloyds Co.*,
    532 S.W.3d 794 (Tex. 2017)..........................................................................17

*In re Syngenta Prod. Liab. Litig.*,
    2024 WL 2835167 (S.D. Tex. 2024) ...........................................................11

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*,
    2008 WL 4613752 (S.D.N.Y. 2008)............................................................18

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ..........................................................................8

*Kirsch v. Fleet St., Ltd.*,
    148 F.3d 149 (2d Cir. 1998) ..........................................................................14

*Lamborn v. Dittmer*,
    726 F. Supp. 510 (S.D.N.Y. 1989) ..............................................................21

*Matteo v. Kohl's Dep't Stores, Inc.*,
    2012 WL 5177491 (S.D.N.Y. 2012).............................................................22

*McGuire v. Russell Miller, Inc.*,
    1 F.3d 1306 (2d Cir. 1993) ..............................................................................5

*Millea v. Metro-N. R.R. Co.*,
   658 F.3d 154 (2d Cir. 2011) ................................................................. 8

*Morozov v. ICOBOX Hub Inc.*,
   2020 WL 5665639 (S.D.N.Y. 2020) ..................................................... 20

*Preston Expl. Co., LP*,
   2013 WL 3229678 ............................................................................... 13

*Remache v. Mac Hudson Grp.*,
   2018 WL 4573072 (E.D.N.Y. 2018) ...................................................... 14

*Safeco Ins. Co. v. M.E.S., Inc.*,
   2018 WL 2766139 (E.D.N.Y. 2018) ...................................................... 14

*Sanchez v. Jyp Foods Inc.*,
   2018 WL 4502008 (S.D.N.Y. 2018) ..................................................... 20

*Sci. Holding Co. v. Plessey Inc.*,
   510 F.2d 15 (2d Cir. 1974) .................................................................... 7

*Sierra Club v. Energy Future Holdings Corp.*,
   2014 WL 1290022 (W.D. Tex. 2014) .................................................... 11

*Sykes v. RFD 3d Ave. I Assocs., LLC*,
   833 N.Y.S.2d 76 (N.Y. App. Div. 2007) ................................................ 6

*Tatintsian v. Vorotyntsev*,
   2020 WL 2836718 (S.D.N.Y. 2020) ..................................................... 13

*Themis Cap. v. Democratic Republic of Congo*,
   2016 WL 817440 (S.D.N.Y. 2016) ....................................................... 19

*Themis Cap. v. Democratic Republic of Congo*,
   2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014) .................................... 21, 22

*Townsend v. Benjamin Enters., Inc.*,
   679 F.3d 41 (2d Cir. 2012) .................................................................... 9

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
   369 F.3d 34 (2d Cir. 2004) .................................................................... 5

*Vista Outdoor Inc.*,
   2018 WL 3104631 ............................................................................... 21

*Watson v. E.S. Sutton*,
   2006 WL 6570643 (S.D.N.Y. 2006) ..................................................... 22

*Wells Fargo Bank N.W., N.A. v. Taca Int'l Airlines, S.A.*,
  315 F. Supp. 2d 347 (S.D.N.Y. 2003) ...................................................................5

*Wells Fargo Bank v. Konover*,
  2014 WL 3908596 (D. Conn. 2014) .....................................................................8

*Wiederhorn v. Merkin*,
  952 N.Y.S.2d 478 (N.Y. App. Div. 2012) .............................................................7

Statutes

28 U.S.C. § 1920.....................................................................................................19, 21

Rules

Fed. R. App. P. 39...........................................................................................................21
Federal Rule Civil Procedure 54 .........................................................................1, 19, 21

## INTRODUCTION

After more than seven years of hard-fought litigation over BMC's claims that IBM breached the parties' contract, committed fraud, and owed BMC over a billion dollars in compensatory and punitive damages, IBM has unquestionably prevailed. On April 30, 2024, the Fifth Circuit reversed the trial court's $1.6 billion judgment in its entirety and rendered a complete take-nothing judgment in IBM's favor. After BMC unsuccessfully sought rehearing *en banc*, the Fifth Circuit's mandate issued on September 25, 2024. IBM timely files this fee application.

IBM is the prevailing party under controlling New York law and is therefore entitled by the parties' Master License Agreement ("MLA") to recover all "reasonable and customary attorney's fees and costs" from BMC. Pursuant to the parties' MLA and Federal Rule of Civil Procedure 54, IBM submits this application for recovery of the attorneys' fees and costs that it has incurred and paid since 2017. In this application, IBM demonstrates that, to stave off BMC's billion-dollar claims, IBM retained highly qualified and experienced trial and appellate counsel familiar with litigating, trying, and appealing large, complex commercial cases. And, as the Fifth Circuit confirmed in its opinion overturning the trial court's decision in BMC's favor and rendering judgment for IBM, this diligent and time-intensive effort ultimately proved successful. IBM is therefore entitled to a full recovery of its attorneys' fees and costs, which are reasonable under the lodestar calculation.

## BACKGROUND OF THE CASE AND STAGE OF THE PROCEEDINGS

BMC filed suit against IBM on July 21, 2017, asserting claims for breach of contract and fraud, among others. Dkt. No. 1.[1] BMC alleged thirteen causes of action against IBM:

- Breach and anticipatory breach of sections 1.1, 5.1, and 5.4 of the 2015 Outsourcing Attachment (4 causes of action);

- Breach of section 8 of the 2008 Master License Agreement;

- Common law trade secret theft;

- Violation of both state (Texas Uniform Trade Secrets Act) and federal (Defend Trade Secrets Act) trade secret statutes;

- Tortious interference;

- Breach of good faith and fair dealing;

- Declaratory relief;

- Unfair competition; and

- Fraudulent inducement.

Dkt. No. 295 ¶¶ 71-182. BMC also sought preliminary and permanent injunctions. For its part, IBM asserted a compulsory, intertwined contractual breach counterclaim on February 22, 2019. Dkt. No. 294.

BMC's claims arose from its complex decades-long relationship with IBM. Both parties offer IT management software solutions for mainframe computers, and IBM also provides IT services requiring day-to-day access to its customer's software, including the customer's BMC software. Dkt. No. 295 ¶¶ 10-12.  For years, the parties negotiated and renegotiated agreements to govern their complex business relationship, culminating in a 2015 Outsourcing Attachment ("OA") to their Master License Agreement ("MLA"). *Id.* ¶¶ 14-29.

---

[1]   Docket numbers ("Dkt. No.") refer to the filings in case number 4:17-cv-02254, and "trial court" refers any presiding and/or magistrate judges in that matter.

AT&T—one of the parties' large mutual customers—undertook a plan to replace or consolidate many of its software products in its so-called "Project Swallowtail," which included replacing some BMC products with IBM's. *Id.* ¶ 36. Because AT&T naturally sought IBM's participation in the project as AT&T's incumbent IT services provider since 2007, BMC accused IBM of obtaining "the right from BMC to access and use AT&T's BMC licenses and products and then wrongfully exploit[ing] that right in order to displace AT&T's BMC software with its own," in violation of the 2015 OA and the MLA. *Id.* ¶¶ 13, 37-38.

As the litigation proceeded, the parties conducted extensive discovery, including: producing 58,879 documents, taking 52 depositions, and designating 10 expert witnesses. IBM moved for summary judgment, arguing that it should be granted judgment on all of BMC's claims and on its own counterclaim. BMC moved for summary judgment on certain of its claims and IBM's counterclaim. Claims remaining after the trial court's ruling on the motions for summary judgment were tried from March 14 through March 24, 2022. On May 30, 2022, the trial court issued its Findings of Fact and Conclusions of Law, and its Final Judgment in favor of BMC, finding that IBM breached section 5.4 of the 2015 OA and that IBM fraudulently induced BMC to enter into the 2015 OA. Dkt. Nos. 756 & 757. The trial court awarded BMC compensatory and punitive damages totaling $1,603,705,597.29. Dkt. No. 757.

The trial court also determined that BMC was the prevailing party pursuant to the MLA's fee-shifting provision. That provision, which is governed by New York law, entitles the "prevailing party in any litigation . . . to recover reasonable and customary attorney's fees and costs from the other party." Ex. B (MLA) § 18. On that basis, and pursuant to BMC's request, the trial court awarded BMC attorneys' fees and costs (totaling $21,615,144), including expenditures to date and conditional appellate expenses and excluding BMC's segregated fees for time spent on

its unsuccessful trade secret claim. Dkt. No. 781 (together with Dkt. No. 757, the "Reversed Judgment"). At that time, the trial court described the huge litigation effort for both sides:

> In the lead-up to trial, the parties **extensively** litigated multiple discovery issues and collectively took fifty-two depositions, issued seventeen expert reports, admitted over one thousand exhibits into evidence, and authored voluminous objections to Judge Bryan's Memorandum & Recommendation. . . Together, the parties filed six motions for summary judgment as well as responses and replies for each; **the summary judgment record alone totaled 790 pages of briefing and over 18,000 pages of exhibits**. . . .
>
> The parties **zealously** litigated this matter at every stage, resulting in **extensive** discovery, **protracted** discovery disputes, and **substantial** motion practice that culminated in two weeks of trial.

Dkt. No. 781 at 3 & 11 (emphasis added).

IBM timely appealed. After extensive briefing by the parties, along with multiple *amicus curiae* submissions and oral argument, the Fifth Circuit issued an opinion on April 30, 2024, reversing and rendering judgment in IBM's favor. *BMC Software, Inc. v. Int'l Bus. Machs. Corp.*, 100 F.4th 573 (5th Cir. 2024). The Fifth Circuit's opinion entirely dismissed BMC's claims against IBM. *Id.* at 576. BMC thereafter petitioned for rehearing and rehearing *en banc*, which was denied. App. Dkt. No. 250-1.[2]

On September 25, 2024, a full 86 months after BMC filed suit, the Fifth Circuit issued its judgment and mandate—restoring the jurisdiction of the district court and replacing the district court's judgment. App. Dkt. No. 251-2, -4. As the prevailing party, IBM's request for its fees is ripe for consideration. Now in the aftermath of IBM's successful appeal, the shoe is on the other foot, and IBM, whose legal positions have been entirely vindicated, is entitled to an award of its fees and costs.

---

[2]    Appellate docket numbers ("App. Dkt. No.") refer to the filings in case number 22-20463 in the U.S. Court of Appeals for the Fifth Circuit.

## ISSUE TO BE DECIDED

Whether IBM is "entitled to recover reasonable and customary attorney's fees and costs" as the "prevailing party" under MLA section 18, and, if so, the proper amount of IBM's reasonable and customary attorneys' fees and costs.

## ARGUMENTS AND AUTHORITIES

As BMC acknowledges, this dispute centers on whether IBM breached the 2015 OA to the 2008 MLA and IBM's alleged fraudulent conduct related to the 2015 OA. *See* Dkt. No. 760 at 2. The Court of Appeals' opinion completely vindicates IBM's position on these issues. Pursuant to well-developed New York law, IBM is the "prevailing party" in this litigation and is entitled to its reasonable and customary attorneys' fees and costs incurred in litigating this case.

## I.    The MLA entitles the prevailing party to attorneys' fees and costs.

Parties may agree by contract to permit recovery of attorneys' fees, and "a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004) (quoting *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993)). The trial court found, and the parties agree, that the MLA and 2015 OA are governed by New York law. Dkt. Nos. 756 at 104, 760 at 2. Under New York law, when "a contract provides for shifting of the actual attorneys['] fees expended by a prevailing party, 'the court will order the losing party to pay whatever amounts have been expended . . . so long as those amounts are not unreasonable.'" *Wells Fargo Bank N.W., N.A. v. Taca Int'l Airlines, S.A.*, 315 F. Supp. 2d 347, 353 (S.D.N.Y. 2003) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)).

Here, the MLA provides that:

> The prevailing party in any litigation is entitled to recover reasonable and customary attorney's fees and costs from the other party.

Ex. B (MLA) § 18. The parties agree—and the trial court held—that this provision is "clear and enforceable" and that, "[b]ecause New York law recognizes private agreements to fees like the one at issue here, the 'prevailing party' is entitled to an award" in this case. Dkt. Nos. 756 at 104, 760 at 3.

## II.    IBM is the prevailing party.

Under New York law, to be considered a prevailing party, "a party must be successful with respect to the central relief sought." *Blinds to Go (U.S.), Inc. v. Times Plaza Dev., L.P.*, 143 N.Y.S.3d 91, 94 (N.Y. App. Div. 2021) (quotation omitted). "Such a determination requires an initial consideration of the true scope of the dispute litigated, followed by a comparison of what was achieved within that scope." *Id.* (quoting *DKR Mortg. Asset Tr. 1 v. Rivera*, 14 N.Y.S.3d 414, 416 (N.Y. App. Div. 2015)). To be a prevailing party, a party must receive "substantial relief" relating to the central claims advanced. *Grand v. Schwarz*, 2019 WL 624603, at *3 (S.D.N.Y. 2019) (quoting *Sykes v. RFD 3d Ave. I Assocs., LLC*, 833 N.Y.S.2d 76, 77-78 (N.Y. App. Div. 2007)); *see Bd. of Mgrs. v. Walker St., LLC*, 774 N.Y.S.2d 701 (N.Y. App. Div. 2004) (awarding attorneys' fees upon finding that the court had validated the theory of recovery in several categories, thereby granting substantial relief).

BMC framed the central dispute as "whether IBM breached the 2015 Outsourcing Attachment" and "IBM's conduct and intentions in agreeing to the 2015 OA and performing Project Swallowtail." Dkt. No. 760 at 2. BMC sought billions in compensatory and punitive damages from IBM under these claims. But upon the Fifth Circuit adopting IBM's construction of the disputed provisions of the OA and rendering a take-nothing judgment against BMC, IBM plainly prevailed on these core issues. App. Dkt. No. 251-2. "Because the complaint was dismissed in its entirety, defendant [IBM] was the prevailing party entitled to its attorneys' fees under [the MLA section 18.]" *CORE Grp. Mktg. LLC v. MIP One Wall St. Acquisition LLC*, 184 N.Y.S.3d 13, 14 (N.Y. App. Div. 2023); *see also Ernie Otto Corp. v. Inland Se. Thompson Monticello, LLC*,

936 N.Y.S.2d 756 (N.Y. App. Div. 2012) (awarding defendant fees as prevailing party because plaintiff's claim was dismissed, and defendant prevailed as a matter of law); *see also Graham Ct. Owner's Corp. v. Taylor*, 24 N.Y.3d 742, 752 ( N.Y. App. Div. 2015) (reasoning the defendant was the prevailing party "[s]ince the [defendant] succeeded in his defense").

That IBM's counterclaim was dismissed is of no moment. "District courts have held that a defendant who successfully fends off a large claim may be awarded costs despite failure to prevail on a counterclaim." *Sci. Holding Co. v. Plessey Inc.*, 510 F.2d 15, 28 (2d Cir. 1974); *see also 25 E. 83 Corp. v. 83rd St. Associates*, 624 N.Y.S.2d 125 (N.Y. App. Div. 1995) ("[B]y successfully defending against plaintiff's lawsuit, defendant must be regarded as the prevailing party."). The prevailing-party determination is not assessed on a claim-by-claim basis, and New York law does not require a party to prevail on every claim to be considered the prevailing party. *See Bd. of Mgrs.*, 774 N.Y.S.2d at 701 ("In order to justify an award of contractual attorneys' fees, the court need not adopt each claim raised in a lawsuit.") (citation omitted); *Wiederhorn v. Merkin*, 952 N.Y.S.2d 478, 482 (N.Y. App. Div. 2012) ("It is not necessary for a party to prevail on all of his claims in order to be considered 'prevailing.'"); *Duane Reade v. 405 Lexington, L.L.C.*, 798 N.Y.S.2d 393, 394 (N.Y. App. Div. 2005) ("That the landlord[] [defendant's] success at trial was only partial does not negate the fact that it prevailed in having plaintiff declared in default of its leases, thus entitling the former to counsel fees.").

Therefore, the Fifth Circuit's reversal of the trial court's judgment and rendering of a take-nothing judgment in IBM's favor means that IBM is the prevailing party and is thus entitled to recover its reasonable and customary attorneys' fees and costs.

## III.    IBM's requested attorneys' fees and costs are reasonable and customary.

When contracts governed by New York law provide for fee shifting, courts apply the "lodestar" method, which provides that a "presumptively reasonable fee" is "comprised of a reasonable hourly rate multiplied by a reasonable number of expended hours." *Finkel v. Omega*

*Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (footnote omitted); *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166-67 (2d Cir. 2011) (same).

In determining contractual attorneys' fees, "there is a strong presumption that the lodestar figure represents the 'reasonable fee'" and the party advocating a reduction in the amount "bears the burden of establishing that an adjustment is necessary to the calculation of a reasonable fee." *Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp.*, 2008 WL 4833025 at *2 (S.D.N.Y. 2008) (quoting *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992)). This Court has already accepted both this methodology and the presumption of reasonableness in awarding BMC its incurred fees and costs as of 2022, without discount or enhancement. Dkt. No. 781 at 13 (quoting *Wells Fargo Bank v. Konover*, 2014 WL 3908596 at *6 (D. Conn. 2014)).

In support of the reasonableness of IBM's incurred attorneys' fees and costs, IBM attaches the sworn declaration of its retained expert on attorneys' fees and costs, Gerard Pecht, the former Global Chief Executive Officer of and Global Head of Dispute Resolution and Litigation for Norton Rose Fulbright, as well as its fee invoices, cost information, and other evidence of reasonableness. Ex. A. As demonstrated below and in the attached evidence, the rates charged and hours expended by IBM's counsel were reasonable and customary under the law and the circumstances of this case.[3]

---

[3]    The Fifth and Second Circuits weigh identical factors when determining the reasonableness of attorneys' fees. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 (1989) (listing the twelve factors as 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases); *Chaparro v. John Varvatos Enters., Inc.*, 2021 WL 5121140 at *1 (2d Cir. 2021) (noting that courts in Second Circuit apply *Johnson* factors).

A.     **IBM attorneys charged reasonable and customary hourly rates.**

Under New York law, an attorney's "reasonable hourly rate should be based on the customary fee charged for similar services by lawyers in the community with like experience and of comparable reputation to those by whom the prevailing party was represented[.]" *E. Ramapo Cent. Sch. Dist. v. New York Sch. Ins. Reciprocal*, 158 N.Y.S.3d 173, 181 (N.Y. App. Div. 2021) (quotation omitted). The relevant community is that of the "district in which the reviewing court sits[,]" here the Southern District of Texas. *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 290 (2d Cir. 2011) (quotation omitted). The rates should be "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Id*. at 289-90 (quotation omitted); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The court may rely on its "own familiarity with the rates prevailing in the district" in conducting this "case-specific inquiry[.]" *Chaparro v. John Varvatos Enters., Inc.*, 2021 WL 5121140 at *1 (2d Cir. 2021) (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012)).

IBM retained experienced, highly skilled attorneys. According to BMC, it retained attorneys who "are highly regarded for their skills, experience, and reputation in trying complex and high-stakes litigation." Dkt. No. 760 at 7. Given the high stakes of this litigation, IBM likewise retained highly skilled and reputable counsel to defend against BMC's claims. IBM retained Quinn Emanuel Urquhart & Sullivan, LLP and Yetter Coleman LLP, both of which are well regarded litigation firms. Ex. A ¶¶ 17 & 56(f). These choices were reasonable. Quinn Emanuel has a long-standing role as a preferred outside counsel to IBM and expertise with New York law in its New York office. *Id*. Further, prior to this lawsuit, Quinn Emanuel had long advised IBM about the specific issue at the core of this lawsuit—the interpretation and operation of the parties' agreements, including the non-displacement provision. *Id*. Yetter Coleman had also served for

- 9 -

many years as IBM's counsel, and it had familiarity with the Court and strategy in this district. *Id.* Thereafter, IBM's trial counsel team collaborated in an efficient manner over the more than seven-year course of the case: Yetter Coleman focused on the trial and the injunction proceedings brought by BMC, while Quinn Emmanuel worked on all aspects of the case's development. *Id.* at ¶ 19.

On appeal, after the (erroneous) rendition of a $1.6 billion judgment against it, IBM reasonably retained Paul Clement of the firm Clement Murphy PLLC, an appellate specialist with a high-profile, national practice and experience before the Fifth Circuit. As a former U.S. Solicitor General, Mr. Clement has distinctive appellate experience, including appeals of multi-billion-dollar trial court verdicts. *Id.* at ¶¶ 53-54. IBM also reasonably solicited appellate input from experienced Fifth Circuit practitioners at Beck Redden LLP, Lynn Pinker Hurst & Schwegmann LLP, and Jones Day. *Id.* at ¶¶ 39 & 54.

Counsel's hourly rates, which are summarized in Exhibit A-1 hereto, reflect their experience and the realities of this litigation. In that regard—based on his more than forty years of experience in complex commercial litigation in state and federal courts throughout Texas, including in the greater Houston area, and other qualifications detailed in his declaration—Mr. Pecht avers that the hourly rates charged by the attorney and legal professionals working on this matter were reasonable under the circumstances of his case. *Id.* ¶¶ 48-54. Mr. Pecht supports his conclusion with respect to the fees of IBM trial counsel by observing as follows:

- Having reviewed the hourly rates charged by each timekeeper who worked on this matter on IBM's behalf, the rates fall within the prevailing market rates for the Houston area and that such rates are reasonable. *Id.*

- Rates for IBM trial counsel in this matter are equivalent to those that BMC claimed were reasonable and customary in its own fee application. More specifically, the 2017 hourly rates paid by IBM and BMC are roughly the same. Thereafter, IBM reasonably

raised its rates in subsequent years, and all such rates were reasonable and customary. *Id.* ¶ 49.[4]

- While BMC "froze" the rates it actually paid to its counsel in years after 2017, the "standard rates" of those same lawyers, which formed the basis of BMC's fee application, reached as high as $1,125 by the year 2022. *Id.*

- While some of the partner rates increased to as high as $1,750 per hour by trial in March 2022, the average billing rates of both Quinn Emanuel ($554) and Yetter Coleman ($574) are lower than the standard rates sought by BMC counsel in its fee application ($664). *Id.* ¶ 52; Ex. A-1.

Multiple benchmarks show the reasonableness of these rates. Southern District of Texas courts award fees for trial attorneys at rates upwards of $950 per hour for partners, $650 for senior litigation attorneys, and $235 for paralegals. *In re Syngenta Prod. Liab. Litig.*, 2024 WL 2835167 (S.D. Tex. 2024), *report and recommendation adopted*, 2024 WL 2835167 (S.D. Tex. 2024). *See also Adhikari v. Dauod & Partners*, 2017 WL 5904782 at *14 (S.D. Tex. 2017) (finding a partner's rate of $910 per hour was "fair and reasonable"); *Eni US Operating Co Inc. v. Transocean Offshore Deepwater Drilling Inc.*, 2018 WL 2271162, at *1 (S.D. Tex. 2018), *vacated on other grounds*, 2019 WL 13218576 (5th Cir. 2019) (finding that "[r]ates ranging from $360 to $800 per hour are reasonable in comparison to the prevailing market rates in Houston, Texas, for comparable law firms and attorneys."); *Calsep A/S v. Intel. Petrol. Software Sols., LLC*, 2022 WL 508334 at *5 (S.D. Tex. 2022) (finding a rate of $700 for partners and $500 for mid-level associates reasonable in a trade secrets dispute resolved on default judgment).[5] Likewise, Harris County District Courts

---

[4]   Hourly rates for primary trial paralegals ranged from $180/hour to $297/hour; notably, these paralegals are litigation specialists, allowing them to charge higher rates and rendering their rates reasonable and customary. Ex. A ¶ 42 n.4.

[5]   While the Houston legal services market is the appropriate forum to gauge the reasonableness of IBM's fee request, the fact that other legal markets in Texas recognize similar rates provides support for the Court's determination here. *See Sierra Club v. Energy Future Holdings Corp.*, 2014 WL 1290022 at *4 (W.D. Tex. 2014) (hourly rate of $925 reflects customary rates); *Imperium v. Samsung*, 2018 WL 1602460 at *7 (E.D. Tex. 2018) (approving $1100 hourly rate); *Hill v. Schilling*, 2022 WL 1321548 at *6 (N.D. Tex. 2022) (holding $830 is reasonable hourly rate).

award fees at rates ranging from $410 to $1,532 for trial attorneys in complex commercial matters. *Marshall v. Marshall*, No. 365,053-401, slip. op at 1-2 (Prob. Ct. No. 4).[6]

These rates are in line with BMC's attorneys' standard rates, after adjusting for experience and profile. *Id.* ¶ 49. At the time of their retention, BMC's counsel (Bracewell LLP) agreed to freeze their rates at 2017 values, ranging from $165 to $885 per hour. When BMC was considered the prevailing party, BMC fully recovered its fees at these rates. Dkt. No. 781 at 11-12. At the same time, Bracewell admitted its "rates for this matter were unquestionably below what the standard market rate is for the same level and caliber of attorneys in Houston today." Dkt. No. 760 at 7. Accordingly, IBM reasonably paid its attorneys more than BMC paid under its frozen rates.

Appellate specialists from Clement & Murphy PLLC, who were retained specifically to overturn the unprecedented judgment against IBM, have unique, national experience challenging and defending billion-dollar judgments and were therefore reasonably compensated with higher rates. As Mr. Pecht observes, IBM's decision to retain the Clement Murphy firm and to pay rates associated with high-stakes appellate litigation can only be gauged by both the size of the $1.6 billion trial court judgment rendered against it and the potential risk of the litigation to IBM's business reputation and customer relations.[7] Ex. A at ¶¶ 39, 53-54.

IBM attorneys charged rates that their client—a sophisticated consumer of professional and legal services—was willing to pay, which (particularly in light of the claims and alleged damages in this case) shows the reasonableness of their rates. *See E. Ramapo Cent. Sch. Dist.*, 158

---

[6]    Application for fees and opinion awarding same are attached as Ex. E & F.

[7]    Rates like those commanded by the Clement Murphy firm are common in high-stakes proceedings. *E.g., Aperia Sols., Inc. v. Evance, Inc.*, 2021 WL 3710563 at *3 (N.D. Tex. 2021), *rev'd on other grounds*, 2022 WL 2116001 (5th Cir. 2022) (noting 2020 hourly rates for partners reached up to $1,800 at Sidley Austin LLP and $1,995 at Akin Gump Strauss Hauer & Feld LLP, and 2019 hourly rates for partners reached $1,540 at Milbank LLP U.S.) (citations omitted).

N.Y.S.3d at 181. Further, the Court can also rely on its own experiences. *See Preston Expl. Co., LP*, 2013 WL 3229678 at *6. These real-world benchmarks confirm the reasonableness of IBM counsel's rates. And Pecht agrees. Ex. A at ¶¶ 53, 56(h).

IBM's attorneys, both at the district court level and at the Court of Appeals, thus charged market rates, which were "well within, or at the high end of, the prevailing rate for attorneys of like skill and experience" in the Southern District of Texas. *See Chaparro*, 2021 WL 5121140, at *2. Accordingly, IBM is entitled to compensation of its legal fees according to the rates accessed by its counsel, which are reasonable and customary in the Houston area.

### B.    IBM's attorneys billed a reasonable and customary number of hours.

In assessing the volume of hours billed, the "critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Tatintsian v. Vorotyntsev*, 2020 WL 2836718, at *4 (S.D.N.Y. 2020) (quoting *Flores v. J&B Club House Tavern, Inc.,* 2012 WL 4891888, at *5 (S.D.N.Y. 2012)). The time expended should be examined "with a view to the value of the work product to the client's case." *Echevarria v. Insight Med., P.C.*, 102 F. Supp. 3d 511, 516 (S.D.N.Y. 2015). As the billed hours, were not "excessive, redundant, or otherwise unnecessary," *Tatintsian*, 2020 WL 2836718, at *4 (quotation omitted), IBM should recover for all hours billed without reduction.[8]

IBM has provided "accurate, detailed and contemporaneous [] time records" for all billing attorneys over the course of the litigation by attaching redacted invoices submitted to IBM, substantiating its entitlement to the fees for the total number of hours billed.[9] Ex. A-3 and A-9; *see*

---

[8]    Notably, in seeking its fees, IBM exercised billing judgment by reducing Quinn Emmanuel's fees by 1.5% (approximately $600,000) to account for issues related to other customers generated by BMC's claims, but not directly and inextricably related to the defense of this lawsuit. Ex. A ¶ 65.

[9]    IBM will provide unredacted invoices to the Court for *in camera* review if requested.

*Remache v. Mac Hudson Grp.*, 2018 WL 4573072, at *19 (E.D.N.Y. 2018), *report and recommendation adopted*, 2018 WL 4568860 (E.D.N.Y. Sept. 24, 2018); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) ("Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done"). To determine whether the number of hours spent by IBM's counsel were reasonable, the Court can use its "experience with the practice of law, to assess the reasonableness of the hours spent." *Safeco Ins. Co. v. M.E.S., Inc.*, 2018 WL 2766139 at *7 (E.D.N.Y. 2018) (quoting *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)).

As BMC argued in its own fee application, this case was "large" and "complex." *See* Dkt. No. 760 at 10. BMC asserted thirteen causes of action, including allegations of fraud and tortious interference, along with multiple claims of breach of contract and trade secret violation. Dkt. No. 295. In connection with those claims, BMC sought compensatory damages north of $1.5 billion, Dkt. No. 723 ¶ 157, with the possibility of hundreds of millions more, *id.* ¶¶ 158 & 329, and punitive damages thereon, *id.* ¶¶ 171-72. The fact that IBM defeated this massive damages claim alone justifies its reasonable fees as "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained[.]'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby,* 506 U.S. 103, 114 (1992)). Here, IBM's success was total, as BMC did not receive a single dollar in damages.

BMC's claims also had potential ramifications for IBM's business at large. In particular, BMC asked the trial court to bless a contract interpretation with potentially crippling effects on IBM's relationship with several of its customers. Ex. C (Fenner Report) at 5. Thus, the dollars at

issue in this case, while massive, were not standing alone a true measure of the stakes between the parties. Ex. A ¶¶ 15-16. In other words, the potential negative impact of an adverse outcome was much larger than the amount of damages sought. IBM's defense against BMC's allegations accordingly required an extraordinary effort by counsel.

Illustrative of this case's size and importance are these details from the case record:

- The parties and subpoenaed third parties produced 58,879 documents, consisting of 401,813 pages.

- BMC served 279 requests that required IBM to produce over 33,550 documents after a review of more than 500,000 documents, all of which had to be screened for both responsiveness and privilege.

- BMC produced 14,579 documents in response to 133 requests.

- 3,661 documents were marked as "attorneys' eyes only" (AEO).

- To protect its legal interests, IBM was required to make hundreds of privilege assertions, which it then defended through briefing and multiple hearings, almost entirely successfully.

- The large number of AEO documents (3,661) required a considerable investment of time to redact both documents and substantive briefs, as well as preparation and filing of repeated motions to seal, which were not routine due to the careful attention the trial court paid to balancing the parties' privacy interest with the public's interest in open proceedings.

- The parties took a total of 52 depositions. Of the depositions, BMC took 28, only seven of which were of deponents located in New York where IBM and its lead counsel are located. In contrast, IBM took 24 depositions, 20 of which were in Houston where BMC and its counsel were located. Thus, the depositions imposed a disproportionate burden on IBM counsel in terms of travel time.

- Each party retained five expert witnesses, who in total issued 17 reports covering a broad range of liability and damages subjects. The parties engaged in extensive briefing over the admissibility of the opinions of these experts. BMC filed five *Daubert* motions, and IBM filed two, followed by responses and replies.

- Together, the parties filed more than 226 motions, responses, and other substantive pleadings. The trial court held 49 hearings or status conferences, many of which related to the discovery disputes described above.

- The parties engaged in extensive and prolonged legal briefing on the merits. BMC filed four motions for summary judgment, and IBM filed two. These motions were followed by responses and replies, as well as by objections to the Magistrate Judge's reports and recommendations, which were also followed by additional briefing from the parties. The summary judgment motions consisted of 790 pages of briefing and over 18,000 pages of exhibits. *See* Dkt. No. 517.

- Initially, BMC sought a temporary restraining order, which IBM opposed and the trial court denied. Docket No. 59. BMC then pursued a preliminary injunction, which required four days of courtroom arguments and evidentiary presentations. Docket Nos. 120, 125, 129 & 135. Ultimately, IBM prevailed, and the trial court denied BMC's request for injunctive relief. Dkt. Nos. 219 & 270.

- The trial court conducted a two-week bench trial, during which a total of nine witnesses testified live.

- At trial, IBM admitted 746 exhibits into evidence and offered nearly 15 hours of deposition designations. Dkt. Nos. 644 & 674. BMC admitted 481 exhibits into evidence at trial and offered roughly 13.5 hours of deposition designations into the trial record. Dkt. Nos. 673 & 721.

- Post-trial, each party filed proposed findings of fact and conclusions of law, collectively consisting of 312 pages and 876 separately enumerated paragraphs. Dkt. Nos. 689 & 690.

- BMC filed a motion for attorneys' fees and costs, which with exhibits, consisted of 1,596 pages. Docket No. 760. IBM responded, and BMC replied in support of its motion. Dkt. Nos. 773 & 774.

- After BMC prevailed before the trial court and IBM stared down one of the largest judgments in Fifth Circuit history, IBM appealed. IBM filed a 57-page opening brief, BMC filed a 63-page response brief, and IBM filed a 27-page reply brief.

- The Fifth Circuit heard oral argument on September 5, 2023.

*See also*, Ex. A ¶¶ 20-37. Throughout all of this, IBM's attorneys justifiably worked more hours than BMC's attorneys. This difference in time invested in the case was a necessity as the risk of the litigation to IBM was not symmetrical to the potential reward to BMC.

The focus of BMC's discovery lays this fact bare. BMC sought discovery on IBM's conduct and legal determinations over a multi-year period and relating to many customers. Much of the discovery sought by BMC contained confidential customer information, financial data, or

privileged analysis. The risk associated with this discovery was heightened by the fact that IBM and BMC are direct competitors. Thus, given the complex issues and high stakes in this case, IBM was required to take appropriate measures to protect its key customer relationships by exercising care in identifying, producing, and redacting confidential documents, and information. Likewise, IBM was often required to litigate those issues by asserting objections and through motion practice. Ex. A ¶¶ 20-31.

In this posture, IBM appropriately spurred its counsel to litigate diligently and aggressively. This is both common sense and good business judgment. Ex. A ¶¶ 44-47. After all, the fact that "one side may have more at risk in a case" may reasonably justify greater expenditures "in time, labor, and money than might be considered 'reasonable' from the other party's perspective." *In re Nat'l Lloyds Co.*, 532 S.W.3d 794, 811 (Tex. 2017); *see also*, *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989) (fees paid opposing counsel not helpful in setting reasonable fee where "two parties had entirely different stakes in the litigation").

In view of the extraordinary stakes of this billion-dollar lawsuit, as attested by Mr. Pecht, the full number of hours billed is eminently reasonable and customary and therefore ought to be recovered under the parties' agreement. *See* Ex. A.

### C.    IBM can receive attorneys' fees incurred in preparing this fee application.

As stated in BMC's own previous fee application, the prevailing party is entitled to recover fees incurred in preparing a fee application. Dkt. No. 760 at 15. The trial court awarded fees to BMC on that basis. Dkt. No. 781 (awarding requested fees in full, except for failed trade secret claim). As a result, BMC likewise should be ordered to pay IBM the full amount of fees and costs that IBM incurs in preparing and prosecuting this request. Ex. A ¶¶ 66-67.

### D.    No segregation is warranted.

It is "unnecessary and unhelpful to segregate fees claim by claim" where "all claims were based on a common core of facts and related legal theories[.]" *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 2008 WL 4613752 at *6 (S.D.N.Y. 2008); *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). For that reason, the Court is not required to segregate any fees related to IBM's unsuccessful counterclaim or affirmative defenses since they arise from the same facts and theories on which IBM indisputably prevailed. BMC has agreed with this position, previously telling the trial court through its fee expert Murray Fogler that IBM's counterclaim "arise[s] from a common set of facts" and is "interrelated such that no segregation is required." Dkt. No. 760-1 ¶ 29(e).

This litigation largely turned on the non-displacement provision and whether IBM breached that provision and engaged in allegedly fraudulent conduct during negotiations related to that provision. *See* Dkt. No. 760 at 2.  By its counterclaim, IBM alleged that BMC breached the parties' "Most Favored Customer" provision—an express representation that BMC provided IBM with pricing and terms "comparable to or better" than those provided to similarly situated customers. *See* Ex. D (2015 OA) at § 18. IBM pleaded that the non-displacement provision—as construed by BMC—was itself a breach of the Most Favored Customer guarantee. Dkt. No. 299 ¶ 41. Further, as a defense to BMC's breach of contract claims, IBM pleaded that BMC's prior breach rendered BMC unable to prove its own performance of the contract—a necessary element of BMC's breach claims. *Id.* at 24-26. IBM's counterclaim and BMC's asserted claims were, then, intertwined legal theories.

Further, in support of its counterclaim, IBM specifically pleaded facts regarding the formation and performance of the non-displacement provision. *Id.* ¶¶ 34-40. These facts share a "common core" with those relied upon by BMC. And, consistent with its breach theory, IBM pleaded the affirmative defense of unclean hands. *Id.* at 24. Ultimately, the counterclaim was

dismissed. Even so, the arguments were intertwined with IBM's successful defense such that its fees should be recovered. *E.g., Douyon v. NY Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 339 (E.D.N.Y. 2014) (holding counsel was entitled to recover full fees where the claims were "rooted in" the same legal actions and "necessarily interconnected").

### E. IBM can receive conditional appellate attorneys' fees in connection with potential appellate challenges.

In the event that BMC seeks review of the Fifth Circuit's decision by the U.S. Supreme Court, IBM asks this Court to make a conditional award of fees. *See Themis Cap. v. Democratic Republic of Congo*, 2016 WL 817440 at *3 (S.D.N.Y. 2016) (finding that "[a]ppellate fees are a form of 'counsel fees'" and that the Second Circuit construes "a contractual provision requiring payment of attorneys' fees as encompassing appellate fees in the absence of contrary contractual language."). As described in the Pecht Declaration, Ex. A ¶ 63(11), IBM requests a conditional award of $500,000 for representation at the *certiorari* stage in the U.S. Supreme Court and $750,000 for representation at the merits briefing and oral argument stages in the U.S. Supreme Court, if that court grants review. IBM also requests a conditional award of $400,000 for briefing to defend this attorney fee award before the Fifth Circuit, and an additional $100,000 if oral argument is granted. *Id.*

## IV.    IBM is entitled to recover its litigation costs.

IBM is entitled to recover all of its reasonable and customary costs, including the fees and expenses paid to expert witnesses.[10] When a contractual provision authorizes "attorneys' fees and costs," New York law dictates that courts are not bound by the enumerated costs permitted by statutes but can award all costs that are reasonable under the contractual language. *See Austrian*

---

[10]    IBM is separately entitled to recover taxable costs pursuant to Federal Rule Civil Procedure 54(d)(1) and 28 U.S.C. § 1920. IBM's taxable costs are set forth in its separately filed Bill of Costs. Ex. A-2.

*Airlines Oesterreichische*, 2008 WL 4833025, at *8-9; *see also Grand*, 2019 WL 624603, at *7 (the prevailing party "is entitled to recover 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"). BMC previously sought and obtained its litigation costs. Docket No. 781 at 17.

New York law requires a prevailing party seeking reimbursement of its incurred costs to submit with the application contemporaneous documentation itemizing the costs requested. *Morozov v. ICOBOX Hub Inc.*, 2020 WL 5665639 at *10 (S.D.N.Y. 2020); *see Sanchez v. Jyp Foods Inc.*, 2018 WL 4502008, at *17 (S.D.N.Y. 2018) (noting that adequate substantiation is required for an award of costs); *see also Ganci v. U.S. Limousine Serv. Ltd.*, 2015 WL 1529772, at *8 (E.D.N.Y. 2015) (the party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested"). This documentation is included in Exhibits A-2 (appellate bond premiums, transcripts, and other taxable costs), A-3 (other costs customarily charged by law firms), A-8 (expert invoices), and A-9 (recent costs).

### A.    IBM is entitled to recover its taxable and other costs.

IBM seeks reimbursement for $8,816,022 incurred from the following types of costs: supersedeas bond premiums, photocopying, printing, service of process, legal research, filing fees, delivery and postage services, transcribing services, document production costs, and witness fees. Ex. A-2, A-3, & A-8. Courts in the Second Circuit have found these costs, and similar costs, to be recoverable. *Gateway Bank, F.S.B. v. Ideal Mortg. Bankers, Ltd.*, 2010 WL 3199746, at *5 (E.D.N.Y. 2010), *report and recommendation adopted*, 2010 WL 3199743 (E.D.N.Y. Aug. 12, 2010) (awarding costs incurred including costs for photocopying, telephone calls, legal research, filing fees, service of process, postage, and air courier services); *Cho v. Koam Med. Servs. P.C.*, 524 F.Supp.2d 202, 212 (E.D.N.Y. 2007) (reimbursing plaintiff for costs related to "Federal Express, reproduction, telephone, facsimile, postage, deposition services, [and] deposition/hearing

transcripts, and database legal services"). The MLA's contractual guarantee of the "prevailing party['s]" entitlement to its "reasonable and customary attorneys' fees and costs" incurred in "any litigation" encompasses IBM's sought costs.

IBM is also entitled to reimbursement for all costs pursuant to 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d). Section 1920 "defines the term 'costs' as used in Rule 54(d) and enumerates expenses that a federal court may tax as costs under the discretionary authority found in Rule 54(d)[.]" *Crawford Fitting Co v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987); *see DiBella v. Hopkins*, 407 F.Supp.2d 537, 539 (S.D.N.Y. 2005) ("costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs").

By federal rule, taxable costs also include the "premiums paid for a bond or other security to preserve rights pending appeal[.]" Fed. R. App. P. 39(e)(3); *Lamborn v. Dittmer*, 726 F. Supp. 510, 520 (S.D.N.Y. 1989) (holding supersedeas bond premiums were "properly taxed"). IBM expended more than six million dollars on its bond premium. A district court has no discretion to deny or reduce this expenditure, which is chief among IBM's recoverable costs. *See City of San Antonio, Texas v. Hotels.com, L.P.*, 593 U. S. 330 (2021).

IBM has prepared a Bill of Costs that reflects IBM's total costs incurred for the categories of taxable costs are $6,339,119.36 and has included an itemized list of those taxable costs. Ex. A-2.

### B.    IBM is entitled to recover its expert fees.

With respect to expert fees, New York courts routinely hold that the prevailing party is entitled to recover costs incurred in retaining an expert witness if the recovery of costs is guaranteed by a contractual obligation. *See, e.g., Vista Outdoor Inc.*, 2018 WL 3104631, at *11; *Themis Cap.*, 2014 WL 4379100 at *9 (S.D.N.Y. Sept. 4, 2014) ("[C]ourts in this District routinely

reimburse prevailing parties for the costs of expert witnesses and consultants, regardless of whether the expert testified at trial.") (quoting *Themis Cap.*, 2014 WL 4379100, at *9). This is especially true when the contract expressly provides for all reasonable and customary costs for any litigation. *See Austrian Airlines Oesterreichische*, 2008 WL 4833025, at *9 (because the contract "clearly—and undisputedly—provides for reasonable attorneys' fees 'and other costs'" and because defendant did not use "duplicative or unnecessary expert witnesses," the Court declined to "make any reductions in the costs related to [defendant's] use of these witnesses."). IBM is seeking reimbursement for the costs incurred by its experts in the amount of $3,292,694. Ex. A-8. IBM is entitled as the prevailing party to recover these expert costs in full.

The reasonableness of expert fees is determined by using the same lodestar method used to determine the reasonableness of attorneys' fees. *Matteo v. Kohl's Dep't Stores, Inc.*, 2012 WL 5177491, at *5 (S.D.N.Y. 2012), *aff'd*, 533 F. App'x 1 (2d Cir. 2013). To satisfy this burden, IBM has submitted the experts' invoices totaling approximately $3.4 million, which are sufficiently detailed for the purposes of assessing the nature and timing of the services provided by the expert and the fees they charged. *See* Ex. A-8; *see also Watson v. E.S. Sutton*, 2006 WL 6570643, at *13 (S.D.N.Y. 2006) (awarding costs to the party who provided the court with expert invoices but not awarding full recovery of costs to the party who failed to submit supporting documentation for expert fees). Reasonableness of these fees is supported by the Pecht Declaration, Ex. A ¶¶ 61, 63(10) & (12), and the fact that BMC sought and was awarded similar costs relating to the services of its own retained expert. In its own fee application, BMC offered similar evidence, Docket No. 760 at 17-18, and the trial court awarded BMC's expert fees as recoverable costs. Docket No. 781 at 16.

Based on the above, IBM is entitled to recover $12,161,942 of its requested costs incurred in pursuing this litigation.

## V.      Summary of IBM's Application

IBM's counsel has expended significant effort and time in this matter, and its successful outcome confirms that these expenditures were reasonable and customary. As supported by the attached evidence, IBM requests the full award of its reasonable and customary fees and costs incurred in this case, which represent approximately 4% of the total judgment that IBM reversed, in the following amounts:

1.  $46,264,764 for reasonable and necessary attorneys' fees incurred through judgment;

2.  $12,161,942 for reasonable and necessary costs incurred;

3.  If BMC seeks review of the Fifth Circuit's decision at the United States Supreme Court. $500,000 if it becomes necessary for IBM to respond to a petition for certiorari to the United States Supreme Court, and an additional $750,000 if the United States Supreme Court grants certiorari.

4.  If BMC seeks appellate review of this attorney fee award, $400,000 for briefing to the Fifth Circuit, and an additional $100,000 if oral argument is granted.

## **CONCLUSION**

Considering the foregoing, IBM respectfully requests an attorneys' fee and cost award in the total amount of $58,426,706, plus conditional appellate fees described herein. IBM further requests all additional legal and equitable relief to which it is entitled.

Dated:  October 9, 2024

Respectfully submitted,

/s/ *R. Paul Yetter*

**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
Richard I. Werder Jr. (admitted pro hac vice)
rickwerder@quinnemanuel.com
Rachel E. Epstein (admitted pro hac vice)
rachelepstein@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000 Telephone
(212) 849-7100 Facsimile

**YETTER COLEMAN LLP**
R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
Timothy S. McConn
State Bar No. 24032713
tmcconn@yettercoleman.com
Grant B. Martinez
State Bar No. 24104118
gmartinez@yettercoleman.com
811 Main Street, Suite 4100
Houston, TX 77002
(713) 682-8000 Telephone
(713) 632-8002 Facsimile

**Attorneys for Defendant International Business
Machines Corporation**

**Certificate of Service**

I certify that on October 9, 2024, a copy of this document was served on all counsel of record using the Court's e-filing system.

/s/ *Timothy S. McConn*
Timothy S. McConn

- 24 -